# 22-1057-cv(L), 22-1061-cv(XAP)

## United States Court of Appeals

*for the*

## Second Circuit

———————

DANIEL CARPENTER, GRIST MILL CAPITAL LLC,

*Plaintiffs-Appellees-Cross-Appellants,*

– v. –

LYNN ALLEN, CHERI GARCIA, TIMOTHY CORSI,

*Defendants-Appellants-Cross-Appellees,*

JOHN DOES, 1-100, JANE DOES, 1-100,

*Defendants.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## SUPPLEMENTAL APPENDIX

JONATHAN J. EINHORN
JONATHAN J. EINHORN LAW OFFICES
*Attorneys for Plaintiff-Appellee-Cross-
Appellant Grist Mill Capital LLC*
129 Whitney Avenue, Suite 1
New Haven, Connecticut 06510
(203) 777-3777

i

# TABLE OF CONTENTS

**Page**

Plaintiff Grist Mill Capital, LLC's Motion for
  Summary Judgment as to Liability Only, filed
  February 16, 2022 ................................................... SA-1

Plaintiff Grist Mill Capital, LLC's Memorandum in
  Support of its Motion for Summary Judgment as
  to Liability Only, filed February 16, 2022 ............ SA-3

Affidavit of Daniel E. Carpenter, Plaintiff, sworn to
  February 15, 2022, filed February 16, 2022 .......... SA-14

Plaintiff Grist Mill Capital, LLC's Statement of
  Material Facts Not in Dispute, filed
  February 16, 2022 ................................................... SA-16

Exhibit 1 to the Foregoing Document -
  U.S. District Court for the District of Connecticut
  Search and Seizure Warrant issued on
  May 25, 2011 ......................................................... SA-20

Exhibit 2 to the Foregoing Document -
  U.S. District Court Search Warrant issued in
  *United States of America v. Premises located at*
  *500 Fifth Avenue, Suite 2320, New York New*
  *York, et al.,* SDNY 08 MAG 2789 ........................ SA-21

Exhibit 3 to the Foregoing Document -
  U.S. Department of Justice Subpoena, dated
  May 25, 2011 ......................................................... SA-23

Exhibit 4 to the Foregoing Document -
  U.S. District Court for the District of
  Connecticut's Notice Concerning Destruction of
  Seized Documents, dated November 18, 2021 ...... SA-26

ii

**Page**

Exhibit 5 to the Foregoing Document - Declaration of Wayne Bursey, dated April 29, 2010, in *Pettibone Tavern, LLC et al. v. Commissioner of Internal Revenue,* U.S. District of Connecticut............................................ SA-33

Exhibit 6 to the Foregoing Document - AUSA Novick Subpoena – Boxes Not Returned .. SA-36

Exhibit 7 to the Foregoing Document - Declaration of Glen Stebbins, dated April 1, 2019, in *United States of America v. Daniel Carpenter,* U.S. District of Connecticut Case. No. 13-CR-226.............................................. SA-37

Exhibit 8 to the Foregoing Document - Plaintiff Grist Mill Capital, LLC's Preliminary Analysis of Damages, filed February 16, 2022 ..... SA-40

Exhibit 9 to the Foregoing Document - Charter Oak Trust Portfolio .................................. SA-45

Exhibit 10 to the Foregoing Document - E-mail Exchanges .................................. SA-46

SA-1

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL CARPENTER and | : | |
| GRIST MILL CAPITAL, LLC, | : | CASE NO. 3:14-cv-741 (SRU) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| LYNN ALLEN *et. al.* | : | FEBRUARY 16, 2022 |
| | : | |
| | : | |
| Defendants. | : | |

### PLAINTIFF GRIST MILL CAPITAL, LLC'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY ONLY, PURSUANT TO FED. R. CIV. P. 56(a)(1)

Pursuant to D. Conn. L. Civ. R. 7(a) and Fed. R. Civ. P. 56(a), the plaintiff Grist Mill Capital, LLC by and through its counsel, Jonathan J. Einhorn, hereby submits its Motion for Summary Judgment as to Liability Only against Defendants. If this motion is granted, Plaintiff will seek damages by way of a Hearing in Damages. Attached hereto is Plaintiff's Affidavit, a Statement of Material Facts and a Memorandum.

WHEREFORE, Plaintiff Grist Mill Capital, LLC respectfully requests that the Court grant Summary Judgment as to Liability Only in its favor against all defendants.

THE PLAINTIFF,
GRIST MILL CAPITAL, LLC

*/s/ Jonathan J. Einhorn*

*ORAL ARGUMENT REQUESTED*

JONATHAN J. EINHORN
129 WHITNEY AVENUE
NEW HAVEN, CT 06510
FEDERAL BAR NO. ct00163
EINHORNLAWOFFICE@GMAIL.COM

SA-2

<u>CERTIFICATION</u>

I hereby certify that on this 16$^h$ day of February, 2022, a copy of the foregoing was emailed to defense counsel, but not filed electronically.

/s/ *Jonathan J. Einhorn*
JONATHAN J. EINHORN

SA-3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DANIEL CARPENTER and | : | |
| GRIST MILL CAPITAL, LLC, | : | CASE NO. 3:14-cv-741 (SRU) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| LYNN ALLEN *et. al.* | : | FEBRUARY 16, 2022 |
| : | | |
| | : | |
| Defendants. | : | |

**PLAINTIFF GRIST MILL CAPITAL, LLC'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY ONLY**

**I.   FACTS**

On May 26, 2011, the defendants searched the plaintiff Grist Mill Capital, LLC's (hereinafter "GMC"), property located at 100 Grist Mill Road, Simsbury, CT under the authority of a search warrants signed by Magistrate Judge Joan Margolis. At no point during the execution of the warrant, and despite repeated demands by Mr. Carpenter or representatives of Grist Mill Capital, LLC, did the defendants and unknown agents ever produce a copy of the search warrant affidavit authorizing their search of the premises.

The search warrant affidavit was not attached to the search warrant as required by the Supreme Court's decision in *Groh v. Ramirez*, 124 S. CI. 1284 (2004). Therefore, the search warrant was facially deficient and was an unlawful and defective warrant *per se.*

The warrant was overly broad and not particularized as to specific items related to probable cause of evidence of a crime as required by law in a valid search warrant and the defendants

1

engaged in a wholesale search of the premises, ransacking 100 Grist Mill Road, and holding individuals, including Mr. Carpenter, against their will and incommunicado for several hours.

The search of the premises was unreasonable in scope and duration, and the defendants remained on the premises for an unreasonably long period of time into the early morning hours of the next day as they ransacked the premises. The defendants seized items beyond the scope of what was authorized, including income tax filings, banking, insurance policies and other items wholly unrelated to any conceivable violation of any law or pursuant to any lawful purpose of the search.

The boxes at the heart of this dispute were seized not by a search warrant but by a "secret subpoena" issued by the United States Attorney's Office to the law firm of Halloran & Sage. (GMC had no knowledge of that subpoena). The Government has been refusing to return all of the boxes and materials seized even though its criminal case against Daniel Carpenter is now completed and the appeals over[1]. However, the Government has never indicted GMC which has been damaged as a result of the defendants' conduct. There are no pending criminal charges against GMC. The defendants' illegal searches and seizures in this case were the proximate cause of GMC going out of business.

The defendants' unlawful conduct prevented GMC from selling the policies that it had financed and owned inside the Charter Oak Trust pursuant to a Split-Dollar Agreement. Those policies had a face amount of $450,000,000. In *United States v. Carpenter*, 3:13cr226 (RNC), the Government represented that the loss caused by the GMC policies in the Charter Oak Trust was over $52,000,000 for Restitution purposes.

The plaintiff GMC seeks damages relating to the execution of the search warrant on May 26, 2011. By docket entry #79 the Court dismissed the Complaint in part, but left intact the claims

---

[1] The Government now claims that a pending 2255 motion by Mr. Carpenter as to his prior criminal conviction justifies them holding on or destroying his documents which were seized.

2

for damages relating to the manner of the search, that is, claims relating to the destruction of property and whether the search exceeded the scope of the warrant.[2]

## II.    LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the Court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). They cannot "rely on conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted).

---

[2] And also as to Mr. Carpenter's detention during the search, but this motion is not made by Mr. Carpenter.

### III.   THE DEFENDANTS' CONDUCT IN THIS CASE WAS A CLEAR VIOLATION OF THE FOURTH AMENDMENT

The Second Circuit has long held that if the search warrant is defective then the search is tantamount to a warrantless search and is "*per se*" unconstitutional. *See Zuniga-Perez v. Sessions*, 897 F.3d 114 (2d Cir. 2018), which states that "even where a warrant has been issued, law enforcement agents are bound by its terms because a warrant generally authorizes no more than what it expressly provides, to act unreasonably beyond the terms of a warrant is akin to acting without a warrant at all." *Id.* at 123, *citing Simon v. City of N.Y.*, 893 F.3d 83, 94 (2d Cir. 2018). *See, also, Massachusetts v. Sheppard*, 468 U.S. 981, 988, n.5 (1984) ("[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.").

The intrusion into an office is therefore governed by the normal Fourth Amendment rule that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 358 (1977), *citing Camara v. Municipal Court*, 387 U.S. 523, 528-29 (1967). The Warrant Clause of the Fourth Amendment protects commercial buildings as well as private homes, and any opposition to that mandate could not be defended in light of the Supreme Court's clear holdings to the contrary. *See, e.g., See v. City of Seattle*, 387 U.S. 541 (1967); *Go-Bart Co. v. United States*, 282 U.S. 344 (1931); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920). Nor can it be claimed that corporations are without some Fourth Amendment rights. *Go-Bart*; *Silverthorne*; *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 205-06 (1946); *Hale v. Henkel*, 201 U.S. 43, 75-76 (1906). *Cf. California Bankers Assn. v. Shultz*, 416 U.S. 21 (1974); *Federal Trade Comm'n v. American Tobacco Co.*, 264 U.S. 298, 305-

06 (1924); *Wilson v. United States*, 221 U.S. 361, 375-76 (1911); *Consolidated Rendering Co. v. Vermont*, 207 U.S. 541, 553-54 (1908).

To hold otherwise would belie the origin of the Fourth Amendment and the American experience. An important forerunner of the first 10 Amendments to the United States Constitution, the Virginia Bill of Rights specifically opposed "general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed." The general warrant was a recurring point of contention in the Colonies immediately preceding the Revolution. The particular offensiveness it engendered was acutely felt by the merchants and businessmen whose premises and products were inspected for compliance with the several parliamentary revenue measures that most irritated the colonists. "[T]he Fourth Amendment's commands grew in large measure out of the colonists' experience with the writs of assistance…[that] granted sweeping power to customs officials and other agents of the King to search at large for smuggled goods." *United States v. Chadwick,* 433 U.S. 1, 7-8 (1977). *See, also, G.M. Leasing* at 355. Against this background, it is untenable that the ban on warrantless searches was not intended to shield places of business as well as of residence. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 311-13 (1978). As Justice Sotomayor famously observed:

> "The Fourth Amendment was adopted specifically in response to the Crown's practice of using general warrants and writs of assistance to search "suspected places" for evidence of smuggling, libel, or other crimes. *Boyd v. United States*, 116 U.S. 616, 625-26 (1886). Early patriots railed against these practices as "the worst instrument of arbitrary power" and John Adams later claimed that "the child Independence was born" from colonists' opposition to their use. *Id.* at 625. The fundamental purpose of the Fourth Amendment's warrant clause is "to protect against all general searches. *Go-Bart* at 357. The Fourth Amendment "protects all, those suspected or known to be offenders as well as the innocent." *Id*. And this Court long ago recognized that efforts "to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land." *Weeks v. United States,* 232 U.S. 383, 393 (1914)." *Messerschmidt v. Millender*, 565 U.S. 535, 560, 571 (2012).

"Qualified immunity does not turn on whether an officer is motivated by good intentions or malice, but rather on the objective reasonableness of an official's conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Harlow*, the Court explained that the government agents were not entitled to "*any*" immunity if they violated a citizen's clearly-established constitutional rights, just as the agents did in this case. The idea that the Government is protected by the "good faith" exception of *Leon* is in direct conflict with the Supreme Court's decision in *Groh*, and the Second Circuit's decision in *In re 650 Fifth Ave,* 934 F.3d 147 (2d Cir. 2019). Significantly, in *Groh*, the Court specifically states that an agent is *not* able to rely on good faith for qualified immunity if the search warrant is defective on its face, and that a "good agent of the law" should have known that it was defective and therefore should not have conducted the search and seizure. In other words, according to the Supreme Court, the agents in this case should have known immediately that the Search Warrant was constitutionally defective on its face. Furthermore, this Court ordered the return and/or destruction of Petitioner's property over five years ago. *See* June 4, 2015 Order in *Carpenter v. Shulman*, No. 13-cv-00563. Please see Judge Nathan's scholarly opinion in *United States v. Wey*, 256 F.Supp.3d 355 (S.D.N.Y. 2017), where she found that:

> Under the settled Circuit law set forth above, failure to reference the suspected crimes would alone be enough to render the Warrants insufficiently particularized. *See 650 Fifth Ave.* at 99 ("for a warrant to meet the particularity requirement, it must identify the alleged crime for which evidence is sought"); *George* at 76 (warrant permitting search of evidence "relating to the commission of a crime" lacked particularity because "[n]othing on the face of the warrant tells the searching officer for what crime the search is being undertaken"); *see also United States v. Romain*, 678 Fed.Appx. 23, 24 (2d Cir. 2017) ("[T]he government concedes that the warrant was facially deficient for failing to reference the criminal statutes that [defendant] was accused of violating even though the supporting document did contain that information."). *Wey* at 384.

All six Fourth Amendment violations in *Wey* are readily apparent in this case as well. The Defendants cannot possibly be allowed qualified immunity under the law. It is difficult to imagine a more "clearly established" right than to be "free from unreasonable searches and seizures" by the

trespassing federal agents in this case, who held people on the basis of a constitutionally defective warrant that had *no names* and *no crimes* listed on its face. As the Second Circuit and the Supreme Court have stated numerous times:

> "[T]he Fourth Amendment requires particularity in the warrant, not in the supporting documents, and, accordingly, the fact that the warrant application adequately described the things to be seized does not save the warrant from failure to satisfy that requirement, *George* at 75-76 (warrant permitting seizure of evidence "relating to the commission of a crime" was constitutionally infirm because "[n]othing on the face of the warrant tells the searching officer for what crimes the search is being undertaken"). *In re 650 Fifth Ave.* at 99-100, *citing Galpin* at 447 and *Groh* at 557.

Moreover, it is clear from the Supreme Court's decisions that a warrantless search is *per se* unreasonable, and in *Groh,* the Court says the same and cites to *Stanford v. Texas,* 379 U.S. 476 (1975) and *United States v. Marti,* 421 F.2d 1263 (2d Cir. 1970) for the following proposition:

> "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional. *Stanford*; *Marti* at 1268-69. That rule is in keeping with the well-established principle that except in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant." *Groh* at 559-60.

As the Supreme Court also explained in *United States v. Grubbs,* 547 U.S. 90 (2006), the Fourth Amendment protects property owners (like Grist Mill Capital) by interposing, *ex ante*, the impartial judgment of a judicial officer. The Lynn Allen Warrant was far worse and more constitutionally defective than the warrants in *Groh, 650 Fifth Ave, Galpin*, or *Wey*, and the Second Circuit has made it abundantly clear that "the burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant." *See United States. v. Clark*, 638 F.3d 89 (2d Cir. 2011), *citing United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992). "The fact that the *application* adequately described the things to be seized does not save the warrant from its facial invalidity. The Fourth Amendment by its terms requires

particularity in the warrant, not in the supporting documents." *Galpin* at 448, *citing Groh* at 557

(emphasis in original).

### IV. THE DEFENDANTS VIOLATED GRIST MILL CAPITAL, LLC'S FOURTH AMENDMENT RIGHTS WHEN THEY ILLEGALLY SEARCHED AND SEIZED THE PLAINTIFF'S PROPERTY

While it is often repeated, Justice Brandeis' famous admonition in *Olmstead v. United*

*States*, 277 U.S. 438, 485 (1928) is worth repeating here:

> Decisions of this Court applying the principles of the *Boyd* case have settled these things. Unjustified search and seizure violates the Fourth Amendment, whatever the character of the paper; whether the paper when taken by the federal officers was in the home, in an office, or elsewhere; whether the taking was effected by force, by fraud, or in the orderly process of a court's procedure. From these decisions, it follows necessarily that the Amendment is violated by the officer's reading the paper without a physical seizure, without his even touching it, and that use, in any criminal proceeding, of the contents of the paper so examined -- as where they are testified to by a federal officer who thus saw the document, or where, through knowledge so obtained, a copy has been procured elsewhere -- any such use constitutes a violation of the Fifth Amendment.

> The protection guaranteed by the Amendments is much broader in scope. The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings, and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone -- the most comprehensive of rights, and the right most valued by civilized men. To protect that right, every unjustifiable intrusion by the Government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment. And the use, as evidence in a criminal proceeding, of facts ascertained by such intrusion must be deemed a violation of the Fifth.

*Olmstead v. United States*, 277 U.S. 438, 485 (1928)(Brandeis, J., dissenting).

Both of the unlawful raids in this case were far worse than the seizure in *Boyd*, which the

Supreme Court decried as the worst in American History. Each of the search warrants in this case

was far more defective than the "glaringly" defective search warrants in *United States v. Benjamin*

*Wey*, and *In re 650 Fifth Ave*, and this case even involved a "secret" subpoena by AUSA Novick

that was the exact same conduct deplored by the Supreme Court in *Silverthorne Lumber* and by

Justice Brandeis in *Olmstead*, citing both *Silverthorne* and *Boyd*.

As *Leon* itself makes clear, the "Good Faith Exception" does not apply to a search that

exceeds the scope of the warrant, as clearly happened here. *Leon* at 921-22; *Groh* at 561 n.4. The

trespassing federal officers could be very polite and professional during a search, but if they go

beyond the scope of a valid warrant or operate under a constitutionally defective warrant as in this

case, then they have still violated the Fourth Amendment and no amount of civility or *Leon*'s Good

Faith Exception can save them from tortious liability. Not only does the "Good Faith Exception"

not protect the IRS Agents in this case, the Supreme Court has made it clear that operating outside

the confines of a valid search warrant is also unconstitutional. *See, e.g., Horton v. California*, 496

U.S. 128, 140 (1990) ("If the scope of a search exceeds that permitted by the terms of a validly

issued warrant or the character of the relevant exception from the warrant requirement, the

subsequent seizure is unconstitutional without more."). This is precisely the same conclusion that

the Second Circuit came to in *In 650 Fifth Ave*, 934 F.3d 147 (2d Cir. 2019) and *In re 650 Fifth

Ave,* 830 F.3d 66 (2d Cir. 2016):

> The good-faith exception recognizes that "the deterrence benefits of exclusion vary with
> the culpability of the law enforcement conduct at issue." *Davis v. United States*, 564 U.S.
> 229, 238 (2011). "When the police exhibit deliberate, reckless, or grossly negligent
> disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends
> to outweigh the resulting costs." *Id.* There are…at least four scenarios where reliance on
> an invalid warrant is unreasonable:
>
>> ... (4) where the warrant is so facially deficient that reliance upon it is unreasonable.
>> *Clark* at 100 (*quoting United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992)).
>
> The fourth scenario "depend[s] on the circumstances of the particular case." *Leon* at 923.
> It applies, for example, when a warrant "fail[s] to particularize the place to be searched or
> the things to be seized*." Id.* The animating concern is whether the "warrant [is] so facially
> deficient...that the executing officers cannot reasonably presume it to be valid." That
> language fits this case like a glove. This warrant is facially deficient. It does not even
> arguably include a reference to the Claimants' alleged crimes or a temporal scope for the
> items to be seized. *650 Fifth Ave*. at 100 ("On its face, the warrant...plainly lacked
> particularity as to the crimes at issue."). No reasonable officer could have presumed that

SA-12

this glaringly deficient warrant was valid. Under all these circumstances, the Government's reliance on this warrant was not objectively reasonable. *See Leon* at 922. To the contrary, the fact that these glaring deficiencies survived the Government's typical process for drafting, reviewing, and executing warrants indicates grossly negligent disregard for Fourth Amendment rights. *See Davis* at 238. In the presence of gross negligence, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. *Id." In Re 650 Fifth Ave.* at 162-65 (2019).

The government may not rely on the good-faith exception. Therefore, Defendants may not rely on the good-faith exception in this case, and this Court should hold the Defendants accountable for its actions and reliance on not one—but two—clearly unconstitutional Search Warrants. Once again, "even where a warrant has been issued, law enforcement agents are bound by its terms: "because a warrant generally authorizes no more than what it expressly provides, to act unreasonably beyond the terms of a warrant is akin to acting without a warrant at all." *Simon v. City of N.Y.*, 893 F.3d 83, 94 (2d Cir. 2018).

## V.     CONCLUSION

For the reasons outlined above, this Court should grant plaintiff Grist Mill Capital's Motion for Summary Judgment as to Liability Only. If the Court grants this motion, the plaintiff will seek damages by way of a hearing in damages.

THE PLAINTIFF,
GRIST MILL CAPITAL, LLC

*/s/ Jonathan J. Einhorn*

JONATHAN J. EINHORN
129 WHITNEY AVENUE
NEW HAVEN, CT 06510
FEDERAL BAR NO. ct00163
EINHORNLAWOFFICE@GMAIL.COM

10

SA-13

<u>CERTIFICATION</u>

    I hereby certify that on this 16th day of February, 2022, a copy of the foregoing was emailed to defense counsel, but not filed electronically.

/s/ *Jonathan J. Einhorn*
JONATHAN J. EINHORN

SA-14

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DANIEL CARPENTER and          :
GRIST MILL CAPITAL, LLC,          :      CASE NO. 3:14-cv-741 (SRU)
                                   :
                Plaintiffs,       :
                                     :
vs.                                     :
                                     :
LYNN ALLEN *et. al.*             :      FEBRUARY 15, 2022
                                     :
                                     :
               Defendants.      :

## AFFIDAVIT OF DANIEL E CARPENTER

I, DANIEL E. CARPENTER, being first duly sworn, depose and say:

1.     I make this affidavit under oath based on my personal knowledge of the facts contained herein. I am of sound mind and under no infirmity. I am over the age of eighteen years of age. I understand the meaning and believe in the obligation of an oath. I am competent to testify and would so testify to the following if so called:

2.     I am the Chairman of Caroline Financial Group, Inc., which is the Managing Member of Grist Mill Capital, LLC. I was present at 100 Grist Mill Road on the day of the unlawful Raid of May 26, 2011. Grist Mill Capital, LLC initiated this action by the filing of this Complaint in April 2014 based on an illegal search and seizure conducted without a valid warrant. The Search Warrant in this case was Constitutionally defective on its face because the Search Warrant Affidavit was not attached, no crime was listed on the Warrant itself, and it was not addressed to any federal officer.

3.     The Boxes at the heart of this dispute were unconstitutionally seized not by a search warrant but by a secret subpoena issued by AUSA David Novick to the law firm Halloran & Sage.

4.     The Government announced that it has no intention of returning the Boxes illegally seized, which is in and of itself a separate violation of not only the Fourth Amendment, but also the Fifth Amendment.

5.     The agents who conducted the illegal search of the property were told multiple times by Donna Wayne and GMC's attorneys that that they were staying past the Warrant's 10:00 pm deadline.

6.     The agents who conducted the illegal search of the property took personal items that were outside the scope of the Warrant.

1

SA-15

7.  Wayne Bursey submitted an affidavit to Judge Covello to get certain Boxes back so that GMC could sell certain polices with over Two Billion in face amount.

8.  The Boxes mentioned in the Bursey Affidavit and unlawfully sought in AUSA Novick's Secret Subpoena are the very same Boxes the Government refuses to return now.

9.  The Government never indicted Grist Mill Capital.

10. The Defendants' and the Government's illegal searches and seizures in this case were the proximate cause of Grist Mill Capital going out of business. $450,000,000 in policies could have been sold for $90,000,000, and after Ridgewood was paid back, there would have been at least $50,000,000 in profits to Grist Mill Capital.

11. Just on the Charter Oak Trust portfolio, Grist Mill Capital had $107,000,000 in expenditures that it could not recoup due to the Defendants' illegal and unlawful acts.

12. As a result of the Defendants' and Government's illegal searches and seizures in this case and the losses that resulted thereof, Grist Mill Capital was forced out of business.


Further Affiant sayeth not.


Dated at SIMSBURY, Connecticut, this 15th day of FEBRUARY, 2022.


DANIEL E. CARPENTER

Subscribed and sworn before me this                    15th day of February 2022.


Notary Public

My Commission expires:  3-31-22


JASON J. CONCATELLI
*NOTARY PUBLIC*
MY COMMISSION EXPIRES MAR. 31, 2022

2

SA-16

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL CARPENTER and | : | |
| GRIST MILL CAPITAL, LLC, | : | CASE NO. 3:14-cv-741 (SRU) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| LYNN ALLEN *et. al.* | : | FEBRUARY 16, 2022 |
| : | | |
| | : | |
| Defendants. | : | |

### PLAINTIFF GRIST MILL CAPITAL, LLC'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE PURSUANT TO LOCAL RULE 56(a)(1)

Pursuant to Local Rules of Civil Procedure 56(a)(1), the Plaintiff Grist Mill Capital, LLC (hereinafter GMC), submits this statement of undisputed material facts in support of its motion for summary judgment.

1. GMC initiated this action by the filing of this Complaint on April, 2014 based on an illegal search and seizure conducted without a valid warrant. The Search Warrant in this case was Constitutionally defective on its face because the Search Warrant Affidavit was not attached, no crime was listed on the Warrant itself, and it was not addressed to any federal officer. See Defective Search Warrant attached as Exhibit One.

2. Attached as Exhibit Two is a copy of the Constitutionally defective warrant that the Second Circuit stated that a warrant was invalid "On its face, [when it] . . . plainly lacked particularity as to the crimes at issue. No reasonable officer could have presumed that this glaringly deficient warrant was valid."

SA-17

3.  The boxes at the heart of this dispute were unconstitutionally seized not by a search warrant but by a "secret subpoena" issued by the United States Attorney's Office to the law firm of Halloran & Sage. See Exhibit Three. GMC had no knowledge of this subpoena.

4.  The Government announced that it has no intention of returning the boxes and materials illegally seized, which is in and of itself a separate violation of not only the Fourth Amendment, but also the Fifth Amendment. See the Government's Statement attached as Exhibit Four.

5.  A Wayne Bursey submitted an affidavit to Judge Covello to get certain boxes back so that GMC could sell certain polices with over Two Billion in face amount. See Exhibit Five.

6.  It is indisputable that the boxes mentioned in the Bursey Affidavit and unlawfully sought in the United States Attorney's "secret subpoena" are the very same boxes the Government refuses to return now. See Exhibit Six

7.  The Government never indicted GMC and is not charged with a crime.

8.  The Defendants' and the Government's illegal searches and seizures in this case were the proximate cause of GMC going out of business.

9.  The Defendants and the Government unlawful conduct prevented GMC from selling the policies that it had financed and owed inside the Charter Oak Trust pursuant to a Split-Dollar Agreement.

10. The Government in *U.S. v. Carpenter*, 3:13-CR-226(RNC) provided a list of the Charter Oak Trust policies to Judge Chatigny showing a face amount of $450,000,000.

11. The Government told Judge Chatigny that the loss caused by the GMC policies in the Charter Oak Trust was over $52,000,000 for Restitution purposes.

SA-18

12. Just one affidavit provided by Lincoln Financial showed the Government to be in error and that Lincoln Financial had actually made $39,000,000 on paying $2,000,000 in premiums. See the Affidavit of Glen Stebbins attached as Exhibit Seven.

13. GMC has submitted its calculation of damages—which is uncontested—that the $450,000,000 in policies could have been sold for $90,000,000, and after Ridgewood was paid back, there would have bene at least $50,000,000 in profits to GMC. See the Preliminary Analysis of Damages attached as Exhibit Eight.

14. Just on the Charter Oak Trust portfolio, GMC had $107,000,000 in expenditures that it could not recoup due to the Defendants' illegal and unlawful acts. See Exhibit Nine.

15. The Defendants trespassed on the property and unlawfully seized property from a company that was protected by the Constitution and the Defendants exceeded the terms of the Search Warrant and the 10:00 PM deadline. See the emails between Attorney Gerry Giaimo of Halloran & Sage and Donna Wayne showing that the Agents trespassing in Stamford and Simsbury stole property based on a defective warrant and stayed past the Warrant's imposed 10:00 pm deadline are attached as Exhibit Ten.

THE PLAINTIFF,
GRIST MILL CAPITAL, LLC

2

SA-19

*/s/ Jonathan J. Einhorn*

JONATHAN J. EINHORN
129 WHITNEY AVENUE
NEW HAVEN, CT 06510
FEDERAL BAR NO. ct00163
EINHORNLAWOFFICE@GMAIL.COM

<u>CERTIFICATION</u>

I hereby certify that on this 14[h] day of February, 2022, a copy of the foregoing was emailed to defense counsel, but not filed electronically.

/s/ *Jonathan J. Einhorn*
JONATHAN J. EINHORN

3

11-92 M-01 (JGM)

AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Connecticut

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The entirety of the premises located at 100 Grist Mill<br>Road in Simsbury, Connecticut, and more particularly<br>described in Attachment B | ) <br> ) Case No. <br> ) <br> ) <br> ) <br> ) |

COPY

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____Connecticut_____
*(Identify the person or describe the property to be searched and give its location)*:
The entirety of the premises located at 100 Grist Mill Road in Simsbury, Connecticut, and more particularly described in Attachment B

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment D

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before     6/4/11
                                                                                                          *(not to exceed 14 days)*
☒ in the daytime  6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been
                                                                                    established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
Joan G. Margolis
            *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
                                                                                            ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  5/25/11, 12:45 p          _____
                                                                                            *Judge's signature*

City and state:   New Haven, CT          _____
                                                                                            Joan G. Margolis
                                                                                            *Printed name and title*

SA-21

DEC-19-2008  12:37       ALAVI FOUNDATION                                    P.02/02

AO
(Rev.
8/97)                    **SEARCH WARRANT ON WRITTEN AFFIDAVIT**

| **United States District Court** | DISTRICT |
|---|---|
| | SOUTHERN DISTRICT OF NEW YORK |
| **UNITED STATES OF AMERICA**<br>v.<br><br>PREMISES located at 500 FIFTH AVENUE, SUITE 2320, NEW YORK, NEW YORK AND 500 FIFTH AVENUE, FIRST LOWER LEVEL STORAGE AREA UNIT 25, NEW YORK, NEW YORK | DOCKET NO.  MAGISTRATE'S ISSUED<br>**08 MAG 2789**<br><br>To:  SPECIAL AGENT GEORGE ENNIS OR ANY AUTHORIZED FEDERAL AGENT |

Affidavit(s) having been made before me by Special Agent George Ennis that he has reason to believe that on the premises known as

500 FIFTH AVENUE, SUITE 2320, NEW YORK, NEW YORK,  AND 500 FIFTH AVENUE, FIRST LOWER LEVEL, STORAGE AREA UNIT 25, NEW YORK, NEW YORK, and any closed or locked containers therein

in the Southern District of New York, there is now being concealed property, namely

**SEE ATTACHMENT**

and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the person or premises above-described and that the grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s);

YOU ARE HEREBY COMMANDED to search on or before December 26, 2008 (not to exceed 10 days), upon receipt by a person within the premises specified of the package described in the supporting affidavit,  the person or place named above for the property specified, serving this warrant and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.) and if the property be found there to seize it, leaving a copy of this warrant and receipt for the property taken, and prepare a written inventory of the property seized and promptly return this warrant to <u>any U.S. Magistrate Judge</u>  as required by law.

| NAME OF AFFIANT | SIGNATURE OF JUDGE OR U.S. MAGISTRATE | DATE/TIME ISSUED |
|---|---|---|
| George J. Ennis, Jr.<br>Special Agent<br>Federal Bureau of Investigation | _Tudor H. Katz_ | DEC 1 9 2008 |

THEODORE H. KATZ
UNITED STATES  MAGISTRATE JUDGE

                                                                    TOTAL P.02

SA-22

## Exhibit A

### ITEMS TO BE SEIZED AT THE PREMISES

1. Any and all documents,[1] including contracts, memoranda of understanding, partnership agreements, incorporation documents, deeds, mortgages, loan documentation, rentals, leases, records of payment, e-mails, letters, memoranda, or other documents or records concerning or relating to the ownership of, rental of, mortgaging of, or investing in the following entities:

    a. Assa Corporation
    b. Assa Company Limited
    c. 650 Fifth Avenue Company
    d. 650 Fifth Avenue, New York, New York
    e. Bank Melli Iran

2. Any and all documents concerning or relating to financial books and records, bank accounts, disbursements, money transfers or employment records of Assa Corporation; Assa Company Limited; 650 Fifth Avenue Company; Bank Melli Iran; the Alavi Foundation; or any of the officers and employees of these entities.

3. Any and all computers; central processing units; external and internal drives; external and internal storage equipment or media; computerized data storage devices; hard disks or floppy disks; CD-ROMs, hard disks, floppy disks; and related or connected computer or data storage equipment.

---

[1] As used herein, the term "documents" means any and all tangible forms of expression, in any language or format, including drafts or finished versions, originals, copies, or annotated copies, however created, produced or stored (manually, mechanically, electronically, electromagnetically, or otherwise), including without limitation: books, papers, files, writings, handwritten notes, typewritten notes, letters, correspondence, memoranda, notebooks, ledgers, term sheets, telexes, telefaxes, telephone message slips, tape recordings, magnetic tapes, digital recordings, electronic recordings, photographs, computerized records stored on computer hard-drives, computer disks, computer hard-drives, recorded telephone messages, recorded fax transmissions, electronic mail messages, voice mail messages, microform, and microfiche.

As used herein, "concerning" means relating to, referring to, describing, evidencing, or constituting.



**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

*Abraham A. Ribicoff Federal Building*          *(860) 947-1101*
*450 Main Street, Room 328*                     *Fax (860) 760-7979*
*Hartford, Connecticut 06103*                   *www.usdoj.gov/usao/ct*

May 25, 2011

Halloran and Sage, LLP
315 Post Road West
Westport, CT 06880-4739
Attention: Dan E. LaBelle, Esq.

       Re:   <u>Non-Disclosure of Subpoena</u>

Dear Sir or Madam:

     You have been served with a subpoena which requires you to appear before a federal grand jury June 28, 2011 with certain specified documents. Because this subpoena is being issued as part of an ongoing investigation, we request that you do not disclose its existence or its contents to any person who is not involved in your internal document production process. If at some point you decide that it is necessary to disclose the existence and/or the contents of this subpoena, I request that you notify me of your intent to do so prior to the time of the disclosure.

     In addition, to the extent that you do not produce certain responsive materials on the basis that you believe they are protected by the attorney-client or any other privilege, please include with your production a log identifying any documents withheld on the basis of privilege.

     YOUR PERSONAL APPEARANCE BEFORE THE GRAND JURY WILL BE EXCUSED if these records are provided to Special Agent Lynn Allen, U.S. Department of Labor, Office of Inspector General, c/o Squad 4, 600 State Street, New Haven, CT 06511, telephone (203) 630-9526, facsimile (203) 630-9530 on or before the grand jury date

               Very truly yours,

               DAVID B. FEIN
               UNITED STATES ATTORNEY

               DAVID E. NOVICK
               ASSISTANT UNITED STATES ATTORNEY

Enclosure

AO 110  (Rev. 06/09) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT

H-10-2-9(416)

for the

District of Connecticut

### SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To:
Halloran & Sage, LLP
315 Post Road West
Westport, CT

YOU ARE COMMANDED to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: | United States District Court   (Grand Jury Room, 3rd Floor) 450 Main Street Hartford, CT 06103 | Date and Time: June 28, 2011 at 9:30 a.m. |
|---|---|---|

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

**SEE ATTACHMENT.**

PLEASE NOTE:

In lieu of personally appearing before the Grand Jury, these records may be provided to these records are provided to Special Agent Lynn Allen, U.S. Department of Labor, Office of Inspector General, c/o Squad 4, 600 State Street, New Haven, CT 06511, telephone (203) 630-9526, facsimile (203) 630-9530 on or before the grand jury date

Date:     May 25, 2011
_____

*CLERK OF COURT*

*Yelena Gutierrez*

Digitally signed by Yelena Gutierrez
DN: cn=Yelena Gutierrez, o=United States District Court, ou=Clerks Office, email=yelena_gutierrez@ctd.uscourts.gov, c=US
Date: 2011.04.04 16:39:54 -04'00'

*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the United States attorney, or assistant United States attorney, who requests this subpoena, are:

Assistant U.S. Attorney David E. Novick
450 Main Street, Room 328
Hartford, CT 06103
Tele: (860) 947-1101     CONTROL #416

SA-25

**Attachment to Subpoena**

**TO:**    Halloran and Sage, LLP
315 Post Road West
Westport, CT 06880-4739

Attention: Dan E. LaBelle, Esq.

Provide all documents and other items seized pursuant to a search warrant executed at 100 Grist Mill Road, Simsbury, Connecticut, by the IRS-CID of Milwaukee, Wisconsin, on April 20, 2010, that are related to Charter Oak Trust, Charter Oak Trust 2009, Grist Mill Capital, and Avon Capital and associated entities, including but not limited to IRS evidence box numbers 36, 38, 54, 75, 81, 103, 205, 238, 249, 287, 293, 300, 308, 35, 37, 121, 128, 129, 125, 239, 32, 90, 124, 204, 237, 243, 247, 253 and 291.

In lieu of personally appearing before the Grand Jury, these records may be provided to Special Agent Lynn Allen, U.S. Department of Labor, Office of Inspector General, c/o Squad 4, 600 State Street, New Haven, CT 06511, telephone (203) 630-9526, facsimile (203) 630-9530 on or before the grand jury date.

Case 22-1061, Document 64, 12/05/2022, 3431335, Page29 of 71

SA-26

Case 3:14-cv-00741-SRU   Document 100-7   Filed 02/16/22   Page 2 of 8
Case 3:14-cv-00741-SRU   Document 92   Filed 11/18/21   Page 1 of 7

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DANIEL E. CARPENTER and               :
GRIST MILL CAPITAL, LLC,
                                      :
        Plaintiffs,                          Docket No.  3:14CV741 (SRU)
                                      :
VS.
                                      :
LYNN ALLEN, CHERI GARCIA,
TIMOTHY CORSI, JOHN DOES 1-100,       :
and JANE DOES 1-100,
                                      :
        Defendants.                          November 18, 2021

**NOTICE CONCERNING DESTRUCTION OF
SEIZED DOCUMENTS**

On November 16, 2021, during a status conference, the Court inquired of the parties

whether it should order the destruction of documents seized during the May 26, 2011 search at 100

Grist Mill Road in Simsbury, Connecticut.   Undersigned Defendants' counsel agrees that

destruction may ultimately be appropriate, but writes to notify this Court of the United States'

objection to an order for destruction of the documents at this time and under the current

circumstances, particularly Carpenter's recent filing under 28 U.S.C. § 2255 seeking to set aside

his conviction and sentence.[1]   As this Court is aware, the material seized by the Government in

---

[1] As a preliminary matter, the Government does not believe that Carpenter or Grist Mill Capital ("GMC") have standing to demand the return of the vast majority of the seized documents, which are the property of the other businesses at 100 Grist Mill Road, not the property of Carpenter or GMC. *See, e.g.*, *Ferreira v. United States*, 354 F. Supp. 2d 406, 411 n.1 (S.D.N.Y. 2005) (denying motion for return of property because defendant "has failed to establish the threshold issue of ownership as to any of the material[.]"); *see also United States v. Carpenter*, No. 3:13cr226(RNC), 2015 WL 9461496, at *7 (D. Conn. Dec. 24, 2015) (stating that Carpenter "has not established that he has standing to return the vast majority of documents, which are in the nature of corporate records."); *United States v. Carpenter*, Case No. 3:13-CR-226-RNC, Doc. No. 352-9 at 48-49 (observing that in addition to GMC, "there are several hundred companies that operate out of 100 Grist Mill Road[.]").

Case 22-1061, Document 64, 12/05/2022, 3431335, Page30 of 71

SA-27

Case 3:14-cv-00741-SRU   Document 100-7   Filed 02/16/22   Page 3 of 8
Case 3:14-cv-00741-SRU   Document 92   Filed 11/18/21   Page 2 of 7

executing the search warrant on May 26, 2011 at 100 Grist Mill Road in Simsbury, Connecticut,

has been maintained as part of the Government's prosecution of Daniel Carpenter.

It is a "generally-accepted rule that a district court cannot order the return of property on a

Fed. R. Crim. P. 41(g) motion when the government has a continuing need for the property as

evidence." *United States v. $16,072.00 in U.S. Currency,* 374 F. Supp. 3d at 205, 209 (N.D.N.Y.

2019) (citing *United States v. Gotti*, 244 F.Supp.2d 120, 124 (E.D.N.Y. 2003)). Such continuing

need may be established where the Government will need the evidence in post-conviction

proceedings. *See United States v. Stoune*, No. 19-14585, 2021 WL 141330, at *3 (11th Cir. Jan.

15, 2021) ("because [defendant's] 28 U.S.C. § 2255 motion to vacate remains pending, we cannot

say that the government will not need these items if there is a new trial."); *United States v. Alford*,

805 Fed. App'x 924, 926 (11th Cir. 2020) ("The Government has a legitimate need to retain the

evidence until Alford exhausts his post-conviction remedies because it would need the evidence

at a new trial if his motion to vacate is successful."), *cert. denied*, 141 S. Ct. 1251 (2021); *United

States v. Davis*, 749 Fed. App'x 618, 619 n.1 (9th Cir. 2019) ("The district court properly denied

Davis's motion to return the remaining items of property in light of the government's explanation

that it was retaining the property in connection with Davis's pending habeas corpus proceedings

under 28 U.S.C. § 2255."); *United States v. Garcon*, 406 F. App'x 366, 368 (11th Cir. 2010)

(finding Petitioner was not entitled to return of two items of property because the items would be

needed as evidence at a retrial in the event Petitioner was able to successfully overturn his

conviction in pending 2255 proceedings); *United States v. Reyes*, No. CR06-5005 FDB, 2010 WL

996416, at *2 (Mar. 15, 2010) (W.D. Wash. Mar. 15, 2010) (denying return of property because

defendant's § 2255 proceeding was still pending and thus, property "retain[ed] their relevant

evidentiary value should Defendant ... succeed in having his sentence vacated and obtaining a

Case 22-1061, Document 64, 12/05/2022, 3431335, Page31 of 71

SA-28

Case 3:14-cv-00741-SRU   Document 100-7   Filed 02/16/22   Page 4 of 8
Case 3:14-cv-00741-SRU   Document 92   Filed 11/18/21   Page 3 of 7

trial"); *Sosa-Pintor v. United States*, No. 4:19-CV-033-MAC-CAN, 2019 WL 2273758, at *2

(E.D. Tex. Apr. 22, 2019), *rec. adopted*, No. 4:19-CV-33, 2019 WL 2267293 (E.D. Tex. May 24,

2019) (defendant's pending 2255 motion constitutes a legitimate reason for continued possession

of the seized evidence); *United States v. Cobb*, No. 8:14-cr-123-T-36MAP, 2017 WL 3499257, at

*3 (M.D. Fla. Aug. 16, 2017) ("[t]he Government's need for the Property as evidence has not

ceased since [petitioner] may still file a 2255 civil action related to his criminal case").

Here, Carpenter's latest and ongoing efforts to undermine his convictions render

destruction of evidence premature. Most recently, on November 5, 2021, Carpenter filed a motion

under 28 U.S.C. § 2255 seeking to set aside his conviction and sentence. *See Carpenter v. United

States*, Case No. 3:21cv1485(RNC), Doc. 1.

*First*, should Carpenter be successful in vacating his many convictions—as unlikely as that

may be—the Government would need access to the seized documents to prepare for a second trial.

In such a second trial the Government would be free to offer any evidence available to it, regardless

of whether that evidence was offered in the first trial. This is particularly true here, where

Carpenter opted for a bench trial in his first trial and may very well opt for a jury in any retrial.

Moreover, Carpenter would be free in a retrial to advance different defenses than those offered in

the first trial, and the Government is entitled to rebut those defenses with the full panoply of

evidence gathered in its investigation, including materials lawfully seized by search warrant.

*Second*, the arguments advanced by Carpenter in his memorandum in support of his § 2255

petition (Case No. 3:21cv1485(RNC), Doc. 1-1, hereinafter "§ 2255 Memorandum") directly

implicate the seized documents. Among other things, Carpenter claims that the executing agents

exceeded the scope of the search warrant, Petition at 38, a claim that may require access to the

documents actually seized. Carpenter also claims that he was denied access to *Brady* material.

Case 22-1061, Document 64, 12/05/2022, 3431335, Page32 of 71

SA-29

Case 3:14-cv-00741-SRU   Document 100-7   Filed 02/16/22   Page 5 of 8
Case 3:14-cv-00741-SRU   Document 92   Filed 11/18/21   Page 4 of 7

Petition at 40-43.  While Carpenter is somewhat cryptic about which material he believes was withheld, it will be important to have access to all the Government's evidence in order to rebut any claim of a discovery failure.

    *Third*, Carpenter's motion for release of grand jury minutes (*Carpenter*, Case No. 3:23CR226, Doc. Nos. 538 at 3, 538-1 at 2, 5-6, & 542), still pending in the district court, claims that the Government lied to the grand jury and that evidence the Government seized during the two searches included exculpatory evidence that the Government withheld from the grand jury. *See* Carpenter, Doc. Nos. 538 at 3, 538-1 at 2, 5-6, & 542.  The Government may need the seized evidence to defend these claims if the district court opts to entertain the motion.

    *Fourth*, Carpenter has a pending appeal of the district court's restitution order in his criminal case. *See Carpenter*, Case No. 3:23CR226, Doc. 475 (notice of appeal); *United States v. Carpenter*, Case No. 19-674 (2d Cir.).  On June 6, 2019, the Second Circuit ordered that appeal held in abeyance while the district court considers the Government's motion for an amended restitution order.  Should the Government have to litigate further the issue of restitution, either in relation to the district court's current consideration of an amended order or following appeal, the Government would need access to the seized documents.

    *Fifth*, in light of the Plaintiffs' indication at the November 16, 2021 status conference that they intend to pursue discovery concerning the seized documents, the documents may now be needed in this litigation.  Plaintiffs seek compensatory and punitive damages partially based on allegations that "defendants seized items beyond what was authorized, including income tax filings, banking, insurance policies and other personal information of Mr. Carpenter's wholly unrelated to any conceivable violation of any law or pursuant to any lawful purpose of the search." Doc. No. 1 at ¶ 16.  They also contend that the materials seized by the DOL improperly included

SA-30

"attorney-client privileged communications between Mr. Carpenter and his counsel regarding the prosecution of a criminal case then pending in the United States District Court for the District of Massachusetts bearing docket number 1:04-cr-10029." *Id.* at ¶ 19. Plaintiffs specifically fault defendant Corsi for purportedly taking "among other items beyond the lawful reach of the warrant, confidential information regarding Mr. Carpenter's life insurance policies, personal tax returns, and Mr. Carpenter's homeowner[']s insurance policy." *Id.* at ¶ 24. Thus, the Defendants may need the seized evidence to respond to Plaintiffs' anticipated discovery request, and/or to defend the remaining *Bivens* claims.

*Sixth*, Carpenter has given the Court every reason to believe that further litigation will be forthcoming that will also implicate the seized documents. In his mail- and wire-fraud prosecution in the District of Massachusetts, which was affirmed by the First Circuit in 2015, *see United States v. Carpenter*, 781 F.3d 599 (1st Cir. 2015), Carpenter filed a section 2255 petition, and, to this day, still seeks to vacate that 19-count conviction, $14,053,715.52 forfeiture order, and 36-month sentence. *See United States v. Carpenter*, 2019 WL 722631 (D. Mass. Feb. 20, 2019), *appeal docketed*, No. 20-2133 (1st Cir. Dec. 1, 2020). Most recently, Carpenter appealed the district court's denial of a writ of *audita quarela* to vacate his conviction, and in the alternative to issue a writ of *coram nobis*, or to dismiss for lack of subject matter jurisdiction. The Government does not believe that these types of frivolous filings, to the extent Carpenter will make them in his Connecticut criminal case, will be successful. However, the Government will nonetheless have to defend against them. Moreover, Carpenter cannot have it both ways—he cannot both demand return (or destruction) of the Government's lawfully seized evidence at the same he continues to file motions that implicate that evidence. Were Carpenter to commit to forbearing on making such claims going forward, and the Court was inclined to enforce that commitment, the Government

Case 22-1061, Document 64, 12/05/2022, 3431335, Page34 of 71

SA-31

Case 3:14-cv-00741-SRU   Document 100-7   Filed 02/16/22   Page 7 of 8
Case 3:14-cv-00741-SRU   Document 92   Filed 11/18/21   Page 6 of 7

would consider destroying the seized evidence and closing its file.[2]   In the meantime, the

Government must be able to defend itself against Carpenter's myriad attacks, and must maintain

all of the evidence against him, including the seized documents.

Respectfully submitted,

Leonard C Boyle
Acting United States Attorney

/s/ .

Christine Sciarrino
Assistant United States Attorney
United States Attorney's Office
157 Church Street -25th Floor
New Haven, Connecticut   06510
Tel. (203) 821-3780/Fax (203) 773-5315
Email: Christine.Sciarrino@usdoj.gov
Federal No. CT3393

---

[2] As previously explained, the Government objects to any *return*, as opposed to destruction, of seized property given that much of the material contains the personal financial and medical information of third parties that Carpenter gained access to through his fraud.

Case 22-1061, Document 64, 12/05/2022, 3431335, Page35 of 71

SA-32

Case 3:14-cv-00741-SRU   Document 100-7   Filed 02/16/22   Page 8 of 8
Case 3:14-cv-00741-SRU   Document 92   Filed 11/18/21   Page 7 of 7

<u>Certification</u>

I hereby certify that on November 18, 2021, a copy of the foregoing Notice was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/

Christine Sciarrino
Assistant United States Attorney

SA-33

Case 3:10-mc-00064-AVC   Document 1-7   Filed 04/29/10   Page 2 of 4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

PETTIBONE TAVERN, LLC, ET AL.          :
                                       :      Case No. _____
V.                                     :
                                       :
COMMISSIONER OF INTERNAL REVENUE       :      April 29, 2010
                                       :
IN RE:  Illegal Seizure of Property by Search   :
Warrant at 100 Grist Mill Road, Simsbury,       :
Connecticut                            :

## DECLARATION OF WAYNE H. BURSEY

I, WAYNE H. BURSEY, pursuant to 28 U.S.C. § 1746(2), hereby declare as

follows:

1.      I am over the age of eighteen and understand the obligations of an oath.

2.      I make this declaration from my personal knowledge and in support of

Petitioners' Emergency Motion for Return of Illegally Seized Property.

3.      I am Trustee of the Charter Oak Trust.

4.      On April 20, 2010, several of my companies located at 100 Grist Mill Road

in Simsbury, Connecticut, including Grist Mill Partners, LLC, Charter Oak Trust, and

1&3 Mill Pond Partners, LLC, were stormed and trampled by 35 – 50 armed Federal

IRS CID Agents wearing Kevlar vests.

5.      On Wednesday, April 21, 2010, I returned to my office located at 100 Grist

Mill Road to find a large number of files and personal documents missing from my

office.

1

SA-34

Case 3:10-mc-00064-AVC   Document 1-7   Filed 04/29/10   Page 3 of 4

6.    The IRS Agents took all documents relating to one particular trust, Charter Oak Trust, of which I am the Trustee. The Charter Oak Trust does not allow tax deductions so it could not possibly be associated with any tax investigation or the underlying search warrant. The IRS's improper search and illegal seizure of documents that are not, and could not be in any way related to this "criminal investigation" has completely disrupted and effectively destroyed the day-to-day operating capability of our company.

7.    As Trustee of the Charter Oak Trust, I must insist on the immediate return of the property stolen from our building because they took all of the files pertaining to the Charter Oak Trust, which does not allow any tax deduction and which were not listed in the warrant, including:

- Live Original Insurance Policies (not Copies);
- Applications for Insurance;
- Confidential Client Financial Information;
- Confidential Medical Information Protected by HIPAA;
- Claim Files;
- Termination Files;
- Loan Agreements;
- Policy Illustrations;
- Adoption Agreements and other Enrollment Documents;
- Policyholder Servicing Requests and other Paperwork;
- Admin Binders.

8.    The federal agents also took every single file and every single policy and application belonging to Grist Mill Capital, LLC. Grist Mill Capital, LLC's portfolio is currently over Two Billion Dollars. This is particularly harmful in that Grist Mill Capital, LLC is in the midst of engineering a deal to sell its portfolio of insurance policies to a major German pension plan next month. This deal is now at risk because every insurance portfolio and policy was seized by the IRS on April 20, 2010.

2

UNIV_CT - 002324

Case 3:10-mc-00064-AVC   Document 1-7   Filed 04/29/10   Page 4 of 4

9. ·     The IRS agents also took personal and business files and depositions from my office and/or my desk, which were not identified in the search warrant, and which relate to real estate companies 1&3 Mill Pond Partners, LLC and Grist Mill Partners, LLC.  Such files include lease agreements and other important documents related to these real estate companies, which are not related to any tax investigations.

10.     The IRS agents also took my daily notebooks that are paramount to my day to day activities and not identified in, or related to, the Search Warrant.

11.     In addition, my personal tax returns and personal 401K file contents were taken from my desk drawers and e-mails, many of which were personal in nature and all of which had nothing to do with the subject matter of the Search Warrant were imaged.

12.     The above mentioned items and files were stolen by IRS FED CID Agents are located in the following boxes:   32, 35, 36, 37, 38, 54, 75, 90, 103, 124, 128, 204, 205, 237, 238, 239, 243, 247, 249, 253, 291, 293 and 300.


I hereby declare under penalty of perjury that the foregoing is true and correct.


Dated:  April 29, 2010

_Wayne H. Bursey_ (signature)
Wayne H. Bursey

Wayne Bursey, being known to me or having produced satisfactory identification, affirmed that he had reviewed the contents of the foregoing and affirmed that the statements made within the affidavit are true.

Subscribed and sworn to before me this 29th day of April, 2010.

_(signature)_
Notary Public
My Commission expires: 3/31/12

JASON J. CONCATELLI
Notary Public, State of Connecticut
My Commission Expires March 31, 2012

# AUSA NOVICK SUBPOENA
# BOXES NOT RETURNED

| | | |
|---|---|---|
| 32 | 124 | 247 |
| 35 | 125* | 249 |
| 36 | 128 | 253 |
| 37 | 129* | 287 |
| 38 | 145 | 291 |
| 54 | 204* | 293 |
| 75 | 205 | 300 |
| 81* | 237 | 308* |
| 90 | 238 | |
| 103 | 239 | |
| 121* | 243 | |

*Boxes Returned

Case 22-1061, Document 64, 12/05/2022, 3431335, Page40 of 71

SA-37

Case 3:14-cv-00741-SRU   Document 100-10   Filed 02/16/22   Page 2 of 4
Case 3:13-cr-00226-RNC   Document 485-1   Filed 04/08/19   Page 2 of 4

UNITED STATES DISTRICT COURT
                 DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.  3:13-CR-226 (RNC) |
| | : | |
| v. | : | |
| | : | |
| DANIEL CARPENTER | : | |

## DECLARATION OF GLEN STEBBINS

     I, Glen Stebbins, make this declaration under penalty of perjury as permitted under Section 1746 of Title 28 of the United States Code.

     1.     I am currently employed by Lincoln Financial Group ("Lincoln").  I have been employed by Lincoln since January 1, 1998.  My current title is Director, Reinsurance.  In that capacity, I am familiar with Lincoln's business practices in connection with obtaining reinsurance coverage for life insurance policies issued by Lincoln.

     2.     I submit this declaration in support of efforts by the United States Attorney's Office for the District of Connecticut ("USAO") to obtain restitution for victims in the case *United States v. Carpenter*, No. 3:13-cr-226-RNC.

     3.     I make the following representations based upon, among other things, my experience at Lincoln, my discussions with other employees of Lincoln, and my review of Lincoln's business records, including, but limited to, records related to the following seven life insurance policies (collectively, the "COT Policies"), issued by Lincoln, on which Lincoln paid a death benefit claim:

| Policy Number | Insured | Issue Date | Claim Paid |
|---|---|---|---|
| xxxxx8562 | Mary Bailey | 2/1/2008 | $9,511,923 |
| xxxxx7596 | William Dudley | 8/6/2008 | $1,750,000 |
| xxxxx8276 | Ronald Goelzer | 1/9/2009 | $5,116,009 |
| xxxxx7837 | George Gordon | 2/3/2008 | $2,511,088 |
| xxxxx5475 | Sash Spencer | 12/22/2006 | $10,225,759 |

SA-38

| Policy Number | Insured | Issue Date | Claim Paid |
|---|---|---|---|
| xxxxx0809 | Sash Spencer | 12/22/2006 | $20,451,518 |
| xxxxx0613 | Joseph Weatherford | 10/10/2008 | $4,000,000 |

4.      As a general matter, Lincoln has numerous reinsurance treaties with various reinsurance companies.  The treaties provide Lincoln with reinsurance coverage for certain life insurance policies issued by Lincoln.  Pursuant to these reinsurance treaties, Lincoln pays premiums to the reinsurance companies, and in exchange, the reinsurance companies pay Lincoln a portion of any reinsured death benefit claim that Lincoln incurs on life insurance policies covered under the treaties.

5.      Once an automatic reinsurance treaty is in force, the treaty automatically covers applicable Lincoln life insurance policies issued thereafter that meet certain parameters specified in the treaty.  A Lincoln life insurance policy may be covered by multiple reinsurance treaties, where each treaty covers a specified share of all death benefit claims for all life insurance policies that fall within the scope of the treaty. A treaty may close to new policies at some point, but reinsurance coverage remains in effect for applicable active policies issued while the treaty was open, and Lincoln pays reinsurance premiums on those active policies until they terminate.

6.      When Lincoln issues a life insurance policy on which reinsurance is in place, Lincoln begins paying reinsurance premiums to the reinsurance companies. While each treaty covers numerous policies, Lincoln pays reinsurance premiums to the reinsurers for each policy covered by the treaty.  Reinsurance premiums are paid on a periodic basis through the duration of the insurance policy. If Lincoln pays a death benefit on a policy, Lincoln obtains reimbursement from the reinsurance companies pursuant to the treaties that cover the policy.

7.      Each of the COT Policies referenced above had reinsurance coverage that went into effect the day the policy was issued.  The reinsurance coverage on each policy remained in

Page 2 of 3

Case 22-1061, Document 64, 12/05/2022, 3431335, Page42 of 71

SA-39

Case 3:14-cv-00741-SRU   Document 100-10   Filed 02/16/22   Page 4 of 4
Case 3:13-cr-00226-RNC   Document 485-1   Filed 04/08/19   Page 4 of 4

effect until the death benefit was paid. The total amount of reinsurance premiums Lincoln paid

on the COT Policies was $2,115,673.57.  The total amount that Lincoln recovered on the COT

Policies from reinsurers was $39,393,378.89.


I declare under penalty of perjury that the foregoing is true and accurate.

Executed on this 1ST day of April 2019, at Hartford, Connecticut.

Glen Stebbins

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL CARPENTER and | : | |
| GRIST MILL CAPITAL, LLC, | : | CASE NO. 3:14-cv-741 (SRU) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| LYNN ALLEN *et. al.* | : | JANUARY 14, 2022 |
| : | | |
| | : | |
| Defendants. | : | |

**PLAINTIFF GRIST MILL CAPITAL, LLC'S**
**PRELIMINARY DAMAGES ANALYSIS**

The Plaintiff Grist Mill Capital, LLC (GMC) hereby submits it's Preliminary Damages

Analysis. Although the Court set a period ending January 15, 2022 for damages discovery at doc.

entry #93, the Defendants have not pursued any discovery relating to damages and this Plaintiff

submits its preliminary analysis of damages for the benefit of the Court and the Defendants.

**I.      Basis of Loss**

In summary, GMC was damaged by the conduct of the Department of Labor ("DOL")[1] in

seizing files and associated materials on May 26, 2011, which precluded GMC from selling the

life insurance policies in its possession.[2] The government continues to erroneously conflate the

claims of Daniel Carpenter with that of GMC, which clearly should be treated separately.

---

[1] The IRS had previously seized files on April 20, 2010 which was the subject of *Carpenter vs. Shulman*, 3:13-cv-563 (SRU), a case now closed. The DOL then did its own seizure on May 26, 2011 which is the subject of this *Bivens* action.
[2] That conduct was compounded on May 25, 2011, when AUSA Novick served a subpoena upon Halloran and Sage requesting that the subpoena be kept confidential and requiring production of the documents

The legality of that seizure of its assets is challenged by GMC[3], and the seizure of those policies and associated materials is what caused a majority of the damages to it. The damages are thus caused by the government's illegal search and seizure, refusal to provide access to records, and intentional destruction of records, resulting in the complete loss of the Grist Mill Capital, LLC portfolio. Several policies were then foreclosed by Ridgewood Finance or lapsed by virtue of a lack of premium payments as GMC had no further assets and was forced out of business.

On May 25, 2011, AUSA David Novick served a subpoena upon Halloran and Sage requesting that the subpoena be kept confidential and requiring production of documents seized by the IRS on April 20, 2010. *See Exh. 1, Novick May 25, 2011 Letter and Subpoena.* The 2011 subpoena lists a series of boxes. *See id.* The list of boxes in the 2011 subpoena is identical to the list of boxes in Wayne Bursey's Affidavit filed on April 29, 2010 in Judge Covello's court in support of Grist Mill Capital, LLC request to obtain access to its records. *See Exh. 2, Bursey Aff.* ℙ *12.*

As the Court is aware, the boxes have still not been returned to Grist Mill Capital, LLC. *See Exh. 3, Boxes Not Returned Listing.* Further, Grist Mill Capital. LLC did not learn about the "secret" subpoena until November of 2020. Following that, AUSA Novick refused to permit access to the information. *See Exh. 4, Aug. 30, 2021 D. Labelle Email.* As of October 27, 2021, Grist Mill Capital, LLC still has not received access to its records.

---

seized by the IRS on April 20, 2010. *See Exh. 1, Novick May 25, 2021 Letter and Subpoena.* Grist Mill Capital. LLC learned about the "secret" subpoena in November of 2020. Following that, AUSA Novick refused to permit access to the information. *See Exh. 4, Aug. 30, 2021 D. Labelle Email.*
[3] Although Judge Chatigny denied a motion to suppress the fruits of the search and seizure in *United States v. Carpenter,* 3:13-cr-216 (RNC*),* GMC was not a party to that case and had no opportunity to be heard before the Court.

Plaintiff Grist Mill Capital, LLC has multiple damages calculation models from which it may choose to use at trial, as outlined below. The damages are caused by the Defendants' illegal search and seizure of vital financial documents, refusal to provide access to records, and intentional destruction of records, resulting in the complete loss of the Grist Mill Capital, LLC portfolio. Similarly, the government's illegal actions caused the loss of the Charter Oak Trust portfolio that is the subject of Collateral Assignment Agreements in favor of Grist Mill Capital, LLC.

II.    **Damage Analysis**

1.    **Lost Net Profit – Sale of Grist Mill Capital, LLC Portfolio**

The Wayne Bursey affidavit attached as Exhibit 3 states that the IRS absconded with records belonging to the Charter Oak Trust and that there is no reason for the IRS to seize Charter Oak Trust records because it could not possibly be associated with any tax records or the IRS search warrant. *See Exh. 2, Bursey Aff. ¶¶ 6-7.* Further, negotiations were occurring to sell the policy portfolio with a cumulative face value of $2 billion owned by Grist Mill Capital, LLC. As a result of the May 25, 2011 subpoena, GMC lost its portfolio of policies.

At a minimum, Grist Mill Capital, LLC would have been paid a very conservative market rate of 14%. The calculation of damages is as follows:

$2,000,000,000.00 x 14% = $280,000,000.00

In the alternative, the calculation at a still-conservative market rate of 20% is as follows:

$2,000,000,000.00 x 20% = $400,000,000.00

2.    **Lost Net Profit – Sale of Charter Oak Trust Portfolio and Collateral Assignment to Grist Mill Capital, LLC**

The Charter Oak Trust owned a portfolio containing policies with a cumulative face value of $450 million. The Charter Oak Trust policies were the subject of collateral assignment

2

agreements and UCC-1 filings in favor of Grist Mill Capital, LLC. A copy of an actual Collateral Assignment Agreement as used is located at *Exhibit 5.*

Using the conservative market rate of 20%, the calculation of damages is as follows:

| | | |
|---|---|---|
| Face value | | $450,000,000.00 |
| Market rate | X | 20% |
| Gross sales proceeds | | $90,000,000.00 |
| Less: Ridgewood debt payoff | | -$35,000,000.00 |
| Estimated sales costs and commissions | | -$3,000,000.00 |
| Lost net profit | | $52,000,000.00 |

**3.      Out of Pocket Cost – Grist Mill Capital, LLC**

The separate listing attached as Exhibit 6 details the various out of pocket costs incurred by Grist Mill Capital, LLC, which totals $107,000,000.00. *See Exhibit 6, GMC Expenditures Summary.*

**4.      Reinsurance Payment/Lost Death Benefits – Chart Oak Trust**

Attached as Exhibit 7 is an April 8, 2019 Declaration filed on behalf of Lincoln Financial Group.  Lincoln admits that Lincoln received a net amount in excess of $39 million from reinsurers. *See Exh. 7, Lincoln Declaration pp. 2-3, ¶ 7.*

The reinsurance payments received by Lincoln Financial Group that total over $39,000,000.00 were based on a $2 million premium payment to the reinsurance carriers represents a fair valuation of death benefits lost by the Charter Oak Trust. Because Charter Oak Trust was deprived of its policies, it was deprived of the death benefits, as the reinsurance payments represent payments of death benefits that otherwise would have been received by Charter Oak Trust and

3

then paid to Grist Mill Capital, LLC under the Collateral Assignment Agreements. *See Exh. 7, Lincoln Declaration pp. 2-3, ¶ 7.*

### III.   Conclusion

Based upon the above analysis, the plaintiff GMC was clearly damaged by the illegal acts of the Defendants and is entitled to Damages in excess of $100,000,000 to be determined at trial.

THE PLAINTIFF,
GRIST MILL CAPITAL, LLC

*/s/ Jonathan J. Einhorn*

JONATHAN J. EINHORN
129 WHITNEY AVENUE
NEW HAVEN, CT 06510
FEDERAL BAR NO. ct00163
EINHORNLAWOFFICE@GMAIL.COM

CERTIFICATION

I hereby certify that on this 14th day of January, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

*/s/ Jonathan J. Einhorn*

JONATHAN J. EINHORN

4

SA-45

**Grist Mill Capital, LLC**
**Premium Expenditures**

### TOTAL COSTS FOR CHARTER OAK TRUST & CHARTER OAK TRUST 2009

| | |
|---|---|
| COLLATERAL: | $1,100,000.00 |
| INTEREST PAID: | $610,685.68 |
| INTEREST CAPLTD: | $7,939,519.74 |
| COT TOTAL: | $9,650,205.42 |
| | |
| GMC 6/8/09 LOAN REPAYMENT(1): | $2,833,568.64 |
| GMC 6/8/09 LOAN REPAYMENT(2): | $965,314.17 |
| GMC 12/3/09 LOAN REPAYMENT: | $510,000.00 |
| PCMG 12/3/09 LOAN REPAYMENT: | $2,774,250.00 |
| LOAN REPAYMENT TOTAL: | $7,083,132.81 |
| | |
| TOTAL OTHER EXPENSES: | $16,733,338.23 |
| | |
| PREMIUM PAYMENTS TO CARRIERS: | $90,384,637.36 |
| | |
| GRAND TOTAL: | $107,117,975.59 |

SA-46

[giaimo@halloran-sage.com]
Sent: Thursday, May 26, 2011 5:08 PM
To: LaBelle, Dan E.; DCarpenter US Benefits
Cc: McGrath Jr., William J.
Subject: Charter oak


Gentlemen:

I attach a copy of the redacted search warrant (sans affidavit) served today.

I await word from the federal agents when they've completed their execution. I was told that an inventory would be available tonight before they leave.

- Gerry

RESPONSES TO:

Gerald T. Giaimo, Esq.
Halloran & Sage LLP
One Goodwin Square
Hartford, CT 06103-4303
Telephone: 860-297-4648
Fax: 860-548-0006
mailto:giaimo@halloran-sage.com
www.halloran-sage.comwww.halloran-sage.com
>


IRS Circular 230 Disclosure: In compliance with Treasury Department Regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used by any taxpayer, and cannot be used, for the purpose of: (i) avoiding penalties under the Internal Revenue Code that may be imposed on the taxpayer; or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Confidentiality: The information contained in this e-mail message is intended only for the use of the individual or entity named above and is privileged and confidential. Any dissemination, distribution, or copy of this communication other than to the individual or entity named above is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone.

<>

SA-47

| | |
|---|---|
| **From:** | Giaimo, Gerald T. <giaimo@halloran-sage.com> |
| **Sent:** | Thursday, May 26, 2011 9:17 PM |
| **To:** | DA Wayne; DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E. |
| **Cc:** | McGrath Jr., William J.; JPastore@foxrothschild.com; Don Trudeau |
| **Subject:** | Re: Charter oak |

Donna: they have it wrong.  LaBelle is going to call the agent in charge and explain the law to her in this regard.

----- Original Message ----
From: dawayne@benistar.com [mailto:dawayne@benistar.com]
Sent: Thursday, May 26, 2011 09:01 PM
To: DCarpenter US Benefits <dcarpenter@usbgi.com>; Giaimo, Gerald T.; robinsonesq@aol.com <robinsonesq@aol.com>; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com <JPastore@foxrothschild.com>; Don Trudeau <dtrudeau@benistar.com>
Subject: Re: Charter oak

They just told me that they will be at least another 4 hours in Simsbury!  I said "I thought you had to be out by 10pm?"  He said "no it has to be executed by 10 pm" -he said they have could be here until morning or until it is done.
Sent from my BlackBerry

-----Original Message-----
From: DCarpenter US Benefits <dcarpenter@usbgi.com>
Date: Thu, 26 May 2011 19:41:21
To: Giaimo, Gerald T.<giaimo@halloran-sage.com>; robinsonesq@aol.com<robinsonesq@aol.com>; LaBelle, Dan E.<LABELLE@halloran-sage.com>
Cc: McGrath Jr., William J.<MCGRATH@halloran-sage.com>; JPastore@foxrothschild.com<JPastore@foxrothschild.com>; DA Wayne<dawayne@benistar.com>; Don Trudeau<dtrudeau@benistar.com>; DCarpenter USBenefits<dcarpenter@usbgi.com>
Subject: RE: Charter oak

can you call every half hour......

Donna Wayne is doing dinner in Simsbury waiting to hear when the coast is clear

From: Giaimo, Gerald T. [giaimo@halloran-sage.com]
Sent: Thursday, May 26, 2011 7:41 PM
To: DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com
Subject: RE: Charter oak

Dan - I did tell her that, but I suspect that they'll be done before that.

-----Original Message-----
From: DCarpenter US Benefits [mailto:dcarpenter@usbgi.com]
Sent: Thursday, May 26, 2011 7:36 PM
To: robinsonesq@aol.com; Giaimo, Gerald T.; LaBelle, Dan E.

1

| | |
|---|---|
| **From:** | DA Wayne <dawayne@benistar.com> |
| **Sent:** | Thursday, May 26, 2011 9:21 PM |
| **To:** | Giaimo, Gerald T.; DCarpenter US Benefits; robinsonesq@aol.com; Dan LaBelle |
| **Cc:** | McGrath Jr., William J.; JPastore@foxrothschild.com; Don Trudeau |
| **Subject:** | Re: Charter oak |

Thanks. I just spoke to her and another agent and when she said that there is no 10pm deadline, I told her that was what they said last time but calls were made and they that's not how it worked out, so I wasn't going to leave until I heard otherwise from our attorneys.

They have door padlocked from inside.

Sent from my BlackBerry

-----Original Message-----
From: "Giaimo, Gerald T." <giaimo@halloran-sage.com>
Date: Thu, 26 May 2011 21:17:17
To: DA Wayne<dawayne@benistar.com>; DCarpenter US Benefits<dcarpenter@usbgi.com>;
robinsonesq@aol.com<robinsonesq@aol.com>; LaBelle, Dan E.<LABELLE@halloran-sage.com>
Cc: McGrath Jr., William J.<MCGRATH@halloran-sage.com>;
JPastore@foxrothschild.com<JPastore@foxrothschild.com>; Don Trudeau<dtrudeau@benistar.com>
Subject: Re: Charter oak

Donna:  they have it wrong.  LaBelle is going to call the agent in charge and explain the law to her in this regard.

----- Original Message -----
From: dawayne@benistar.com [mailto:dawayne@benistar.com]
Sent: Thursday, May 26, 2011 09:01 PM
To: DCarpenter US Benefits <dcarpenter@usbgi.com>; Giaimo, Gerald T.; robinsonesq@aol.com
<robinsonesq@aol.com>; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com <JPastore@foxrothschild.com>; Don Trudeau
<dtrudeau@benistar.com>
Subject: Re: Charter oak

They just told me that they will be at least another 4 hours in Simsbury!  I said "I thought you had to be out by 10pm?"
He said "no it has to be executed by 10 pm" -he said they have could be here until morning or until it is done.
Sent from my BlackBerry

-----Original Message-----
From: DCarpenter US Benefits <dcarpenter@usbgi.com>
Date: Thu, 26 May 2011 19:41:21
To: Giaimo, Gerald T.<giaimo@halloran-sage.com>; robinsonesq@aol.com<robinsonesq@aol.com>; LaBelle, Dan
E.<LABELLE@halloran-sage.com>
Cc: McGrath Jr., William J.<MCGRATH@halloran-sage.com>;
JPastore@foxrothschild.com<JPastore@foxrothschild.com>; DA Wayne<dawayne@benistar.com>; Don
Trudeau<dtrudeau@benistar.com>; DCarpenter USBenefits<dcarpenter@usbgi.com>
Subject: RE: Charter oak

1

can you call every half hour......

Donna Wayne is doing dinner in Simsbury waiting to hear when the coast is clear

---

From: Giaimo, Gerald T. [giaimo@halloran-sage.com]
Sent: Thursday, May 26, 2011 7:41 PM
To: DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com
Subject: RE: Charter oak

Dan - I did tell her that, but I suspect that they'll be done before that.

-----Original Message-----
From: DCarpenter US Benefits [mailto:dcarpenter@usbgi.com]
Sent: Thursday, May 26, 2011 7:36 PM
To: robinsonesq@aol.com; Giaimo, Gerald T.; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; DCarpenter US Benefits
Subject: RE: Charter oak

definitely would love Gerry to tell Cheri that they should leave at
10:00 as well.....

---

From: robinsonesq@aol.com [robinsonesq@aol.com]
Sent: Thursday, May 26, 2011 7:31 PM
To: giaimo@halloran-sage.com; DCarpenter US Benefits; LABELLE@halloran-sage.com
Cc: MCGRATH@halloran-sage.com; JPastore@foxrothschild.com
Subject: Re: Charter oak

We're going to wait until 9:45 to tell them they have to leave Stamford by 10.

-----Original Message-----
From: Giaimo, Gerald T. <giaimo@halloran-sage.com>
To: DCarpenter US Benefits <dcarpenter@usbgi.com>; LaBelle, Dan E.
<LABELLE@halloran-sage.com>
Cc: McGrath Jr., William J. <MCGRATH@halloran-sage.com>; Jack Robinson <robinsonesq@aol.com>
Sent: Thu, May 26, 2011 7:27 pm
Subject: RE: Charter oak

Dan C:  I just called Cheri Garcia (lol) to check in on the progress, and she said they are going to be longer than predicted - closer to 10 p.m..  She said they don't expect to be removing very much but they are looking at every piece of paper.  I informed her that we expected them to vacate at 10 p.m..  I also confirmed that an inventory will be produced to us tonight.

I have remained in Hartford, but I will be heading to New Haven shortly.
I will call you/email you as soon as I receive word that they are done.

- Gerry

SA-50

| | |
|---|---|
| **From:** | LaBelle, Dan E. <LABELLE@halloran-sage.com> |
| **Sent:** | Thursday, May 26, 2011 10:12 PM |
| **To:** | DA Wayne; Giaimo, Gerald T.; DCarpenter US Benefits; robinsonesq@aol.com |
| **Cc:** | MCGRATH@halloran-sage.com; JPastore@foxrothschild.com; Don Trudeau |
| **Subject:** | Re: Charter oak |

Donna, please get me a number for the agent in charge.

*Sent via DROID on Verizon Wireless*

-----Original message-----

**From:** dawayne@benistar.com
**To:** "Giaimo, Gerald T." <giaimo@halloran-sage.com>, DCarpenter US Benefits <dcarpenter@usbgi.com>, "robinsonesq@aol.com" <robinsonesq@aol.com>, Dan LaBelle <labelle@halloran-sage.com>
**Cc:** "McGrath Jr., William J." <MCGRATH@halloran-sage.com>, "JPastore@foxrothschild.com" <JPastore@foxrothschild.com>, Don Trudeau <dtrudeau@benistar.com>
**Sent:** Fri, May 27, 2011 02:00:35 GMT+00:00
**Subject:** Re: Charter oak

Everyone still here. Can see through window as they are going through Kehoe's office.
Sent from my BlackBerry

-----Original Message-----
From: "Giaimo, Gerald T."
Date: Thu, 26 May 2011 21:31:17
To: DA Wayne; DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; Don Trudeau
Subject: Re: Charter oak

Thank you Donna. Hold tight.

----- Original Message -----
From: dawayne@benistar.com [mailto:dawayne@benistar.com]
Sent: Thursday, May 26, 2011 09:20 PM
To: Giaimo, Gerald T.; DCarpenter US Benefits ; robinsonesq@aol.com ; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com ; Don Trudeau
Subject: Re: Charter oak

Thanks. I just spoke to her and another agent and when she said that there is no 10pm deadline, I told her that was what they said last time but calls were made and they that's not how it worked out, so I wasn't going to leave until I heard otherwise from our attorneys.

They have door padlocked from inside.

Sent from my BlackBerry

-----Original Message-----

1

SA-51

From: "Giaimo, Gerald T."
Date: Thu, 26 May 2011 21:17:17
To: DA Wayne; DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; Don Trudeau
Subject: Re: Charter oak

Donna: they have it wrong. LaBelle is going to call the agent in charge and explain the law to her in this regard.

----- Original Message -----
From: dawayne@benistar.com [mailto:dawayne@benistar.com]
Sent: Thursday, May 26, 2011 09:01 PM
To: DCarpenter US Benefits ; Giaimo, Gerald T.; robinsonesq@aol.com ; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com ; Don Trudeau
Subject: Re: Charter oak

They just told me that they will be at least another 4 hours in Simsbury! I said "I thought you had to be out by 10pm?" He said "no it has to be executed by 10 pm" -he said they have could be here until morning or until it is done.
Sent from my BlackBerry

-----Original Message-----
From: DCarpenter US Benefits
Date: Thu, 26 May 2011 19:41:21
To: Giaimo, Gerald T.; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; DA Wayne; Don Trudeau; DCarpenter USBenefits
Subject: RE: Charter oak

can you call every half hour......

Donna Wayne is doing dinner in Simsbury waiting to hear when the coast is clear


From: Giaimo, Gerald T. [giaimo@halloran-sage.com]
Sent: Thursday, May 26, 2011 7:41 PM
To: DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com
Subject: RE: Charter oak

Dan - I did tell her that, but I suspect that they'll be done before that.

-----Original Message-----
From: DCarpenter US Benefits [mailto:dcarpenter@usbgi.com]
Sent: Thursday, May 26, 2011 7:36 PM
To: robinsonesq@aol.com; Giaimo, Gerald T.; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; DCarpenter US Benefits
Subject: RE: Charter oak

definitely would love Gerry to tell Cheri that they should leave at

2

SA-52

They have door padlocked from inside.

Sent from my BlackBerry

-----Original Message-----
From: "Giaimo, Gerald T." <giaimo@halloran-sage.com>
Date: Thu, 26 May 2011 21:17:17
To: DA Wayne<dawayne@benistar.com>; DCarpenter US Benefits<dcarpenter@usbgi.com>;
robinsonesq@aol.com<robinsonesq@aol.com>; LaBelle, Dan E.<LABELLE@halloran-sage.com>
Cc: McGrath Jr., William J.<MCGRATH@halloran-sage.com>;
JPastore@foxrothschild.com<JPastore@foxrothschild.com>; Don Trudeau<dtrudeau@benistar.com>
Subject: Re: Charter oak

Donna:  they have it wrong.  LaBelle is going to call the agent in charge and explain the law to her in this regard.

----- Original Message -----
From: dawayne@benistar.com [mailto:dawayne@benistar.com]
Sent: Thursday, May 26, 2011 09:01 PM
To: DCarpenter US Benefits <dcarpenter@usbgi.com>; Giaimo, Gerald T.; robinsonesq@aol.com
<robinsonesq@aol.com>; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com <JPastore@foxrothschild.com>; Don Trudeau
<dtrudeau@benistar.com>
Subject: Re: Charter oak

They just told me that they will be at least another 4 hours in Simsbury! I said "I thought you had to be out by 10pm?"
He said "no it has to be executed by 10 pm" -he said they have could be here until morning or until it is done.
Sent from my BlackBerry

-----Original Message-----
From: DCarpenter US Benefits <dcarpenter@usbgi.com>
Date: Thu, 26 May 2011 19:41:21
To: Giaimo, Gerald T.<giaimo@halloran-sage.com>; robinsonesq@aol.com<robinsonesq@aol.com>; LaBelle, Dan
E.<LABELLE@halloran-sage.com>
Cc: McGrath Jr., William J.<MCGRATH@halloran-sage.com>;
JPastore@foxrothschild.com<JPastore@foxrothschild.com>; DA Wayne<dawayne@benistar.com>; Don
Trudeau<dtrudeau@benistar.com>; DCarpenter USBenefits<dcarpenter@usbgi.com>
Subject: RE: Charter oak

can you call every half hour......

Donna Wayne is doing dinner in Simsbury waiting to hear when the coast is clear

From: Giaimo, Gerald T. [giaimo@halloran-sage.com]
Sent: Thursday, May 26, 2011 7:41 PM
To: DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com
Subject: RE: Charter oak

Dan - I did tell her that, but I suspect that they'll be done before that.

2

SA-53

| From: | robinsonesq@aol.com |
|---|---|
| Sent: | Thursday, May 26, 2011 11:01 PM |
| To: | DA Wayne; Giaimo, Gerald T.; DCarpenter US Benefits; Dan LaBelle |
| Cc: | McGrath Jr., William J.; Joe Pastore; Don Trudeau |
| Subject: | Re: Charter oak |

We have the inventory, investigation name is "Charter Oak"


Sent on the Sprint® Now Network from my BlackBerry®

-----Original Message-----
From: robinsonesq@aol.com
Date: Fri, 27 May 2011 02:38:14
To: <dawayne@benistar.com>; Giaimo, Gerald T.<giaimo@halloran-sage.com>; Dan<dcarpenter@usbgi.com>; Dan LaBelle<labelle@halloran-sage.com>
Reply-To: robinsonesq@aol.com
Cc: McGrath Jr., William J.<MCGRATH@halloran-sage.com>; Joe Pastore<jpastore@foxrothschild.com>; Don Trudeau<dtrudeau@benistar.com>
Subject: Re: Charter oak

Finished in Stamford 20 mins ago. Took all COT files, imaged server &  All hard drives. 2 guys still here finishing server, but we have control of office.


Sent on the Sprint® Now Network from my BlackBerry®

-----Original Message-----
From: dawayne@benistar.com
Date: Fri, 27 May 2011 02:00:35
To: Giaimo, Gerald T.<giaimo@halloran-sage.com>; DCarpenter US Benefits<dcarpenter@usbgi.com>; robinsonesq@aol.com<robinsonesq@aol.com>; Dan LaBelle<labelle@halloran-sage.com>
Reply-To: dawayne@benistar.com
Cc: McGrath Jr., William J.<MCGRATH@halloran-sage.com>; JPastore@foxrothschild.com<JPastore@foxrothschild.com>; Don Trudeau<dtrudeau@benistar.com>
Subject: Re: Charter oak

Everyone still here. Can see through window as they are going through Kehoe's office.
Sent from my BlackBerry

-----Original Message-----
From: "Giaimo, Gerald T." <giaimo@halloran-sage.com>
Date: Thu, 26 May 2011 21:31:17
To: DA Wayne<dawayne@benistar.com>; DCarpenter US Benefits<dcarpenter@usbgi.com>; robinsonesq@aol.com<robinsonesq@aol.com>; LaBelle, Dan E.<LABELLE@halloran-sage.com>
Cc: McGrath Jr., William J.<MCGRATH@halloran-sage.com>; JPastore@foxrothschild.com<JPastore@foxrothschild.com>; Don Trudeau<dtrudeau@benistar.com>
Subject: Re: Charter oak

SA-54

Thank you Donna. Hold tight.

----- Original Message -----
From: dawayne@benistar.com [mailto:dawayne@benistar.com]
Sent: Thursday, May 26, 2011 09:20 PM
To: Giaimo, Gerald T.; DCarpenter US Benefits <dcarpenter@usbgi.com>; robinsonesq@aol.com
<robinsonesq@aol.com>; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com <JPastore@foxrothschild.com>; Don Trudeau
<dtrudeau@benistar.com>
Subject: Re: Charter oak

Thanks. I just spoke to her and another agent and when she said that there is no 10pm deadline, I told her that was what
they said last time but calls were made and they that's not how it worked out, so I wasn't going to leave until I heard
otherwise from our attorneys.

They have door padlocked from inside.

Sent from my BlackBerry

-----Original Message-----
From: "Giaimo, Gerald T." <giaimo@halloran-sage.com>
Date: Thu, 26 May 2011 21:17:17
To: DA Wayne<dawayne@benistar.com>; DCarpenter US Benefits<dcarpenter@usbgi.com>;
robinsonesq@aol.com<robinsonesq@aol.com>; LaBelle, Dan E.<LABELLE@halloran-sage.com>
Cc: McGrath Jr., William J.<MCGRATH@halloran-sage.com>;
JPastore@foxrothschild.com<JPastore@foxrothschild.com>; Don Trudeau<dtrudeau@benistar.com>
Subject: Re: Charter oak

Donna: they have it wrong.  LaBelle is going to call the agent in charge and explain the law to her in this regard.

----- Original Message -----
From: dawayne@benistar.com [mailto:dawayne@benistar.com]
Sent: Thursday, May 26, 2011 09:01 PM
To: DCarpenter US Benefits <dcarpenter@usbgi.com>; Giaimo, Gerald T.; robinsonesq@aol.com
<robinsonesq@aol.com>; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com <JPastore@foxrothschild.com>; Don Trudeau
<dtrudeau@benistar.com>
Subject: Re: Charter oak

They just told me that they will be at least another 4 hours in Simsbury! I said "I thought you had to be out by 10pm?"
He said "no it has to be executed by 10 pm" -he said they have could be here until morning or until it is done.
Sent from my BlackBerry

-----Original Message-----
From: DCarpenter US Benefits <dcarpenter@usbgi.com>
Date: Thu, 26 May 2011 19:41:21
To: Giaimo, Gerald T.<giaimo@halloran-sage.com>; robinsonesq@aol.com<robinsonesq@aol.com>; LaBelle, Dan
E.<LABELLE@halloran-sage.com>
Cc: McGrath Jr., William J.<MCGRATH@halloran-sage.com>;
JPastore@foxrothschild.com<JPastore@foxrothschild.com>; DA Wayne<dawayne@benistar.com>; Don
Trudeau<dtrudeau@benistar.com>; DCarpenter USBenefits<dcarpenter@usbgi.com>

2

SA-55

Subject: RE: Charter oak

can you call every half hour......

Donna Wayne is doing dinner in Simsbury waiting to hear when the coast is clear

_____
From: Giaimo, Gerald T. [giaimo@halloran-sage.com]
Sent: Thursday, May 26, 2011 7:41 PM
To: DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com
Subject: RE: Charter oak

Dan - I did tell her that, but I suspect that they'll be done before that.

-----Original Message-----
From: DCarpenter US Benefits [mailto:dcarpenter@usbgi.com]
Sent: Thursday, May 26, 2011 7:36 PM
To: robinsonesq@aol.com; Giaimo, Gerald T.; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; DCarpenter US Benefits
Subject: RE: Charter oak

definitely would love Gerry to tell Cheri that they should leave at
10:00 as well.....

_____
From: robinsonesq@aol.com [robinsonesq@aol.com]
Sent: Thursday, May 26, 2011 7:31 PM
To: giaimo@halloran-sage.com; DCarpenter US Benefits; LABELLE@halloran-sage.com
Cc: MCGRATH@halloran-sage.com; JPastore@foxrothschild.com
Subject: Re: Charter oak

We're going to wait until 9:45 to tell them they have to leave Stamford by 10.


-----Original Message-----
From: Giaimo, Gerald T. <giaimo@halloran-sage.com>
To: DCarpenter US Benefits <dcarpenter@usbgi.com>; LaBelle, Dan E.
<LABELLE@halloran-sage.com>
Cc: McGrath Jr., William J. <MCGRATH@halloran-sage.com>; Jack Robinson <robinsonesq@aol.com>
Sent: Thu, May 26, 2011 7:27 pm
Subject: RE: Charter oak


Dan C:  I just called Cheri Garcia (lol) to check in on the progress, and she said they are going to be longer than predicted
- closer to 10 p.m..  She said they don't expect to be removing very much but they are looking at every piece of paper.  I
informed her that we expected them to vacate at 10 p.m..  I also confirmed that an inventory will be produced to us
tonight.

I have remained in Hartford, but I will be heading to New Haven shortly.
I will call you/email you as soon as I receive word that they are done.

3

- Gerry

-----Original Message-----
From: DCarpenter US Benefits
[mailto:dcarpenter@usbgi.com<mailto:dcarpenter@usbgi.com?>]
Sent: Thursday, May 26, 2011 5:21 PM
To: Giaimo, Gerald T.; LaBelle, Dan E.
Cc: McGrath Jr., William J.; DCarpenter US Benefits; Jack Robinson
Subject: RE: Charter oak

let's get the affidavit ASAP

Who has copy of filings we did in front of Covello.......Pettibone v CIR _____
From: Giaimo, Gerald T.
[giaimo@halloran-sage.com<mailto:giaimo@halloran-sage.com>]
Sent: Thursday, May 26, 2011 5:08 PM
To: LaBelle, Dan E.; DCarpenter US Benefits
Cc: McGrath Jr., William J.
Subject: Charter oak

Gentlemen:

I attach a copy of the redacted search warrant (sans affidavit) served today.

I await word from the federal agents when they've completed their execution. I was told that an inventory would be available tonight before they leave.

- Gerry

RESPONSES TO:

Gerald T. Giaimo, Esq.
Halloran & Sage  LLP
One Goodwin Square
Hartford, CT 06103-4303
Telephone:  860-297-4648
Fax:  860-548-0006
mailto:giaimo@halloran-sage.com<mailto:giaimo@halloran-sage.com?>
www.halloran-sage.com<file://www.halloran-sage.com<UrlBlockedError.aspx>
>

IRS Circular 230 Disclosure:  In compliance with Treasury Department Regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used by any taxpayer, and cannot be used, for the purpose of: (i) avoiding penalties under the Internal Revenue Code that may be imposed on the taxpayer; or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Confidentiality:  The information contained in this e-mail message is intended only for the use of the individual or entity named above and is privileged and confidential.  Any dissemination, distribution, or copy of this communication other

4

SA-57

| | |
|---|---|
| **From:** | DA Wayne <dawayne@benistar.com> |
| **Sent:** | Thursday, May 26, 2011 11:24 PM |
| **To:** | Dan LaBelle; robinsonesq@aol.com; Giaimo, Gerald T.; DCarpenter US Benefits |
| **Cc:** | MCGRATH@halloran-sage.com; Joe Pastore; Don Trudeau |
| **Subject:** | Re: Charter oak |

7 agents left the building a few minutes ago. The rest are still here in no hurry to go anywhere.

Sent from my BlackBerry

---

**From:** "LaBelle, Dan E." <LABELLE@halloran-sage.com>
**Date:** Thu, 26 May 2011 23:14:39 -0400
**To:** robinsonesq@aol.com<robinsonesq@aol.com>; DA Wayne<dawayne@benistar.com>; Giaimo, Gerald T.<giaimo@halloran-sage.com>; DCarpenter US Benefits<dcarpenter@usbgi.com>
**Cc:** MCGRATH@halloran-sage.com<MCGRATH@halloran-sage.com>; Joe Pastore<jpastore@foxrothschild.com>; Don Trudeau<dtrudeau@benistar.com>
**Subject:** Re: Charter oak

Thank you. Please scan inventory tomorrow.

*Sent via DROID on Verizon Wireless*

-----Original message-----

> **From:** robinsonesq@aol.com
> **To:** dawayne@benistar.com, "Giaimo, Gerald T." <giaimo@halloran-sage.com>, Dan <dcarpenter@usbgi.com>, Dan LaBelle <labelle@halloran-sage.com>
> **Cc:** "McGrath Jr., William J." <MCGRATH@halloran-sage.com>, Joe Pastore <jpastore@foxrothschild.com>, Don Trudeau <dtrudeau@benistar.com>
> **Sent:** Fri, May 27, 2011 03:01:03 GMT+00:00
> **Subject:** Re: Charter oak
>
> We have the inventory, investigation name is "Charter Oak"
>
>
> Sent on the Sprint® Now Network from my BlackBerry®
>
> -----Original Message-----
> From: robinsonesq@aol.com
> Date: Fri, 27 May 2011 02:38:14
> To: ; Giaimo, Gerald T.; Dan; Dan LaBelle
> Reply-To: robinsonesq@aol.com
> Cc: McGrath Jr., William J.; Joe Pastore; Don Trudeau
> Subject: Re: Charter oak
>
> Finished in Stamford 20 mins ago. Took all COT files, imaged server &
> All hard drives. 2 guys still here finishing server, but we have control of office.

1

SA-58

Sent on the Sprint® Now Network from my BlackBerry®

-----Original Message-----
From: dawayne@benistar.com
Date: Fri, 27 May 2011 02:00:35
To: Giaimo, Gerald T.; DCarpenter US Benefits; robinsonesq@aol.com; Dan LaBelle
Reply-To: dawayne@benistar.com
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; Don Trudeau
Subject: Re: Charter oak

Everyone still here. Can see through window as they are going through Kehoe's office.
Sent from my BlackBerry

-----Original Message-----
From: "Giaimo, Gerald T."
Date: Thu, 26 May 2011 21:31:17
To: DA Wayne; DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; Don Trudeau
Subject: Re: Charter oak

Thank you Donna. Hold tight.

----- Original Message -----
From: dawayne@benistar.com [mailto:dawayne@benistar.com]
Sent: Thursday, May 26, 2011 09:20 PM
To: Giaimo, Gerald T.; DCarpenter US Benefits ; robinsonesq@aol.com ; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com ; Don Trudeau
Subject: Re: Charter oak

Thanks. I just spoke to her and another agent and when she said that there is no 10pm deadline, I told her that was what they said last time but calls were made and they that's not how it worked out, so I wasn't going to leave until I heard otherwise from our attorneys.

They have door padlocked from inside.

Sent from my BlackBerry

-----Original Message-----
From: "Giaimo, Gerald T."
Date: Thu, 26 May 2011 21:17:17
To: DA Wayne; DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; Don Trudeau
Subject: Re: Charter oak

Donna: they have it wrong. LaBelle is going to call the agent in charge and explain the law to her in this regard.

----- Original Message -----
From: dawayne@benistar.com [mailto:dawayne@benistar.com]
Sent: Thursday, May 26, 2011 09:01 PM
To: DCarpenter US Benefits ; Giaimo, Gerald T.; robinsonesq@aol.com ; LaBelle, Dan E.

2

Cc: McGrath Jr., William J.; JPastore@foxrothschild.com ; Don Trudeau
Subject: Re: Charter oak

They just told me that they will be at least another 4 hours in Simsbury! I said "I thought you had to be
out by 10pm?" He said "no it has to be executed by 10 pm" -he said they have could be here until
morning or until it is done.
Sent from my BlackBerry

-----Original Message-----
From: DCarpenter US Benefits
Date: Thu, 26 May 2011 19:41:21
To: Giaimo, Gerald T.; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; DA Wayne; Don Trudeau; DCarpenter
USBenefits
Subject: RE: Charter oak

can you call every half hour......

Donna Wayne is doing dinner in Simsbury waiting to hear when the coast is clear

_____

From: Giaimo, Gerald T. [giaimo@halloran-sage.com]
Sent: Thursday, May 26, 2011 7:41 PM
To: DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com
Subject: RE: Charter oak

Dan - I did tell her that, but I suspect that they'll be done before
that.

-----Original Message-----
From: DCarpenter US Benefits [mailto:dcarpenter@usbgi.com]
Sent: Thursday, May 26, 2011 7:36 PM
To: robinsonesq@aol.com; Giaimo, Gerald T.; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; DCarpenter US
Benefits
Subject: RE: Charter oak

definitely would love Gerry to tell Cheri that they should leave at
10:00 as well.....

_____

From: robinsonesq@aol.com [robinsonesq@aol.com]
Sent: Thursday, May 26, 2011 7:31 PM
To: giaimo@halloran-sage.com; DCarpenter US Benefits;
LABELLE@halloran-sage.com
Cc: MCGRATH@halloran-sage.com; JPastore@foxrothschild.com
Subject: Re: Charter oak

We're going to wait until 9:45 to tell them they have to leave Stamford
by 10.

3

SA-60

-----Original Message-----
From: Giaimo, Gerald T.
To: DCarpenter US Benefits ; LaBelle, Dan E.

Cc: McGrath Jr., William J. ; Jack Robinson

Sent: Thu, May 26, 2011 7:27 pm
Subject: RE: Charter oak

Dan C: I just called Cheri Garcia (lol) to check in on the progress,
and she said they are going to be longer than predicted - closer to 10
p.m.. She said they don't expect to be removing very much but they are
looking at every piece of paper. I informed her that we expected them
to vacate at 10 p.m.. I also confirmed that an inventory will be
produced to us tonight.

I have remained in Hartford, but I will be heading to New Haven shortly.
I will call you/email you as soon as I receive word that they are done.

- Gerry

-----Original Message-----
From: DCarpenter US Benefits
[mailto:dcarpenter@usbgi.com]
Sent: Thursday, May 26, 2011 5:21 PM
To: Giaimo, Gerald T.; LaBelle, Dan E.
Cc: McGrath Jr., William J.; DCarpenter US Benefits; Jack Robinson
Subject: RE: Charter oak

let's get the affidavit ASAP

Who has copy of filings we did in front of Covello.......Pettibone v CIR

From: Giaimo, Gerald T.
[giaimo@halloran-sage.com]
Sent: Thursday, May 26, 2011 5:08 PM
To: LaBelle, Dan E.; DCarpenter US Benefits
Cc: McGrath Jr., William J.
Subject: Charter oak

Gentlemen:

I attach a copy of the redacted search warrant (sans affidavit) served
today.

I await word from the federal agents when they've completed their
execution. I was told that an inventory would be available tonight
before they leave.

4

SA-61

- Gerry

RESPONSES TO:

Gerald T. Giaimo, Esq.
Halloran & Sage LLP
One Goodwin Square
Hartford, CT 06103-4303
Telephone: 860-297-4648
Fax: 860-548-0006
mailto:giaimo@halloran-sage.com
www.halloran-sage.comwww.halloran-sage.com
>

IRS Circular 230 Disclosure: In compliance with Treasury Department
Regulations, we inform you that any U.S. tax advice contained in this
communication (including any attachments) is not intended or written to
be used by any taxpayer, and cannot be used, for the purpose of: (i)
avoiding penalties under the Internal Revenue Code that may be imposed
on the taxpayer; or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed herein.

Confidentiality: The information contained in this e-mail message is
intended only for the use of the individual or entity named above and is
privileged and confidential. Any dissemination, distribution, or copy
of this communication other than to the individual or entity named above
is strictly prohibited. If you have received this communication in
error, please notify us immediately by telephone.

<>

SA-62

| | |
|---|---|
| **From:** | DA Wayne <dawayne@benistar.com> |
| **Sent:** | Thursday, May 26, 2011 11:46 PM |
| **To:** | Dan LaBelle; robinsonesq@aol.com; Giaimo, Gerald T.; DCarpenter US Benefits |
| **Cc:** | MCGRATH@halloran-sage.com; Joe Pastore; Don Trudeau |
| **Subject:** | Re: Charter oak |

Maybe it wouldn't take so long if the agents would move a little faster! The one in my office is leaned back in my chair, feet up on console reading a file.

Sent from my BlackBerry

---

**From:** "LaBelle, Dan E." <LABELLE@halloran-sage.com>
**Date:** Thu, 26 May 2011 23:14:39 -0400
**To:** robinsonesq@aol.com<robinsonesq@aol.com>; DA Wayne <dawayne@benistar.com>; Giaimo, Gerald T.<giaimo@halloran-sage.com>; DCarpenter US Benefits<dcarpenter@usbgi.com>
**Cc:** MCGRATH@halloran-sage.com<MCGRATH@halloran-sage.com>; Joe Pastore<jpastore@foxrothschild.com>; Don Trudeau<dtrudeau@benistar.com>
**Subject:** Re: Charter oak

Thank you. Please scan inventory tomorrow.

*Sent via DROID on Verizon Wireless*

-----Original message-----
> **From:** robinsonesq@aol.com
> **To:** dawayne@benistar.com, "Giaimo, Gerald T." <giaimo@halloran-sage.com>, Dan <dcarpenter@usbgi.com>, Dan LaBelle <labelle@halloran-sage.com>
> **Cc:** "McGrath Jr., William J." <MCGRATH@halloran-sage.com>, Joe Pastore <jpastore@foxrothschild.com>, Don Trudeau <dtrudeau@benistar.com>
> **Sent:** Fri, May 27, 2011 03:01:03 GMT+00:00
> **Subject:** Re: Charter oak

We have the inventory, investigation name is "Charter Oak"

Sent on the Sprint® Now Network from my BlackBerry®

-----Original Message-----
From: robinsonesq@aol.com
Date: Fri, 27 May 2011 02:38:14
To: ; Giaimo, Gerald T.; Dan; Dan LaBelle
Reply-To: robinsonesq@aol.com
Cc: McGrath Jr., William J.; Joe Pastore; Don Trudeau
Subject: Re: Charter oak

Finished in Stamford 20 mins ago. Took all COT files, imaged server &
All hard drives. 2 guys still here finishing server, but we have control of office.

1

SA-63

Sent on the Sprint® Now Network from my BlackBerry®

-----Original Message-----
From: dawayne@benistar.com
Date: Fri, 27 May 2011 02:00:35
To: Giaimo, Gerald T.; DCarpenter US Benefits; robinsonesq@aol.com; Dan LaBelle
Reply-To: dawayne@benistar.com
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; Don Trudeau
Subject: Re: Charter oak

Everyone still here. Can see through window as they are going through Kehoe's office.
Sent from my BlackBerry

-----Original Message-----
From: "Giaimo, Gerald T."
Date: Thu, 26 May 2011 21:31:17
To: DA Wayne; DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; Don Trudeau
Subject: Re: Charter oak

Thank you Donna. Hold tight.

----- Original Message -----
From: dawayne@benistar.com [mailto:dawayne@benistar.com]
Sent: Thursday, May 26, 2011 09:20 PM
To: Giaimo, Gerald T.; DCarpenter US Benefits ; robinsonesq@aol.com ; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com ; Don Trudeau
Subject: Re: Charter oak

Thanks. I just spoke to her and another agent and when she said that there is no 10pm deadline, I told her that was what they said last time but calls were made and they that's not how it worked out, so I wasn't going to leave until I heard otherwise from our attorneys.

They have door padlocked from inside.

Sent from my BlackBerry

-----Original Message-----
From: "Giaimo, Gerald T."
Date: Thu, 26 May 2011 21:17:17
To: DA Wayne; DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; Don Trudeau
Subject: Re: Charter oak

Donna: they have it wrong. LaBelle is going to call the agent in charge and explain the law to her in this regard.

----- Original Message -----
From: dawayne@benistar.com [mailto:dawayne@benistar.com]
Sent: Thursday, May 26, 2011 09:01 PM

2

SA-64

To: DCarpenter US Benefits ; Giaimo, Gerald T.; robinsonesq@aol.com ; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com ; Don Trudeau
Subject: Re: Charter oak

They just told me that they will be at least another 4 hours in Simsbury! I said "I thought you had to be
out by 10pm?" He said "no it has to be executed by 10 pm" -he said they have could be here until
morning or until it is done.
Sent from my BlackBerry

-----Original Message-----
From: DCarpenter US Benefits
Date: Thu, 26 May 2011 19:41:21
To: Giaimo, Gerald T.; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; DA Wayne; Don Trudeau; DCarpenter
USBenefits
Subject: RE: Charter oak

can you call every half hour......

Donna Wayne is doing dinner in Simsbury waiting to hear when the coast is clear


From: Giaimo, Gerald T. [giaimo@halloran-sage.com]
Sent: Thursday, May 26, 2011 7:41 PM
To: DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com
Subject: RE: Charter oak

Dan - I did tell her that, but I suspect that they'll be done before
that.

-----Original Message-----
From: DCarpenter US Benefits [mailto:dcarpenter@usbgi.com]
Sent: Thursday, May 26, 2011 7:36 PM
To: robinsonesq@aol.com; Giaimo, Gerald T.; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; DCarpenter US
Benefits
Subject: RE: Charter oak

definitely would love Gerry to tell Cheri that they should leave at
10:00 as well.....

From: robinsonesq@aol.com [robinsonesq@aol.com]
Sent: Thursday, May 26, 2011 7:31 PM
To: giaimo@halloran-sage.com; DCarpenter US Benefits;
LABELLE@halloran-sage.com
Cc: MCGRATH@halloran-sage.com; JPastore@foxrothschild.com
Subject: Re: Charter oak

We're going to wait until 9:45 to tell them they have to leave Stamford
by 10.

3

SA-65

| | |
|---|---|
| **From:** | DA Wayne <dawayne@benistar.com> |
| **Sent:** | Friday, May 27, 2011 12:03 AM |
| **To:** | robinsonesq@aol.com; Don Trudeau |
| **Subject:** | Re: Charter oak |

Yes, but you are inside with a toilet and no mosquitoes! :(

Sent from my BlackBerry

**From:** "robinsonesq@aol.com" <robinsonesq@aol.com>
**Date:** Thu, 26 May 2011 23:48:34 -0400
**To:** DA Wayne<dawayne@benistar.com>; Dan LaBelle<labelle@halloran-sage.com>; Giaimo, Gerald T.<giaimo@halloran-sage.com>; DCarpenter US Benefits<dcarpenter@usbgi.com>
**ReplyTo:** "robinsonesq@aol.com" <robinsonesq@aol.com>
**Cc:** MCGRATH@halloran-sage.com<MCGRATH@halloran-sage.com>; Joe Pastore<jpastore@foxrothschild.com>; Don Trudeau<dtrudeau@benistar.com>
**Subject:** Re: Charter oak

Keep your chin up! Don and I are staying here until last techie leaves!

Sent on the Sprint® Now Network from my BlackBerry®

**From:** dawayne@benistar.com
**Date:** Fri, 27 May 2011 03:46:28 +0000
**To:** Dan LaBelle<labelle@halloran-sage.com>; robinsonesq@aol.com<robinsonesq@aol.com>; Giaimo, Gerald T.<giaimo@halloran-sage.com>; DCarpenter US Benefits<dcarpenter@usbgi.com>
**ReplyTo:** dawayne@benistar.com
**Cc:** MCGRATH@halloran-sage.com<MCGRATH@halloran-sage.com>; Joe Pastore<jpastore@foxrothschild.com>; Don Trudeau<dtrudeau@benistar.com>
**Subject:** Re: Charter oak

Maybe it wouldn't take so long if the agents would move a little faster! The one in my office is leaned back in my chair, feet up on console reading a file.

Sent from my BlackBerry

**From:** "LaBelle, Dan E." <LABELLE@halloran-sage.com>
**Date:** Thu, 26 May 2011 23:14:39 -0400
**To:** robinsonesq@aol.com<robinsonesq@aol.com>; DA Wayne<dawayne@benistar.com>; Giaimo, Gerald T.<giaimo@halloran-sage.com>; DCarpenter US Benefits<dcarpenter@usbgi.com>
**Cc:** MCGRATH@halloran-sage.com<MCGRATH@halloran-sage.com>; Joe Pastore<jpastore@foxrothschild.com>; Don Trudeau<dtrudeau@benistar.com>
**Subject:** Re: Charter oak

SA-66

----- Original Message -----
From: dawayne@benistar.com [mailto:dawayne@benistar.com]
Sent: Thursday, May 26, 2011 09:20 PM
To: Giaimo, Gerald T.; DCarpenter US Benefits ; robinsonesq@aol.com ; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com ; Don Trudeau
Subject: Re: Charter oak

Thanks. I just spoke to her and another agent and when she said that there is no 10pm deadline, I told her that was what they said last time but calls were made and they that's not how it worked out, so I wasn't going to leave until I heard otherwise from our attorneys.

They have door padlocked from inside.

Sent from my BlackBerry

-----Original Message-----
From: "Giaimo, Gerald T."
Date: Thu, 26 May 2011 21:17:17
To: DA Wayne; DCarpenter US Benefits; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; Don Trudeau
Subject: Re: Charter oak

Donna: they have it wrong. LaBelle is going to call the agent in charge and explain the law to her in this regard.

----- Original Message -----
From: dawayne@benistar.com [mailto:dawayne@benistar.com]
Sent: Thursday, May 26, 2011 09:01 PM
To: DCarpenter US Benefits ; Giaimo, Gerald T.; robinsonesq@aol.com ; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com ; Don Trudeau
Subject: Re: Charter oak

They just told me that they will be at least another 4 hours in Simsbury! I said "I thought you had to be out by 10pm?" He said "no it has to be executed by 10 pm" -he said they have could be here until morning or until it is done.
Sent from my BlackBerry

-----Original Message-----
From: DCarpenter US Benefits
Date: Thu, 26 May 2011 19:41:21
To: Giaimo, Gerald T.; robinsonesq@aol.com; LaBelle, Dan E.
Cc: McGrath Jr., William J.; JPastore@foxrothschild.com; DA Wayne; Don Trudeau; DCarpenter USBenefits
Subject: RE: Charter oak

can you call every half hour......

Donna Wayne is doing dinner in Simsbury waiting to hear when the coast is clear

_____
From: Giaimo, Gerald T. [giaimo@halloran-sage.com]
Sent: Thursday, May 26, 2011 7:41 PM

3

SA-67

| | |
|---|---|
| **From:** | DA Wayne <dawayne@benistar.com> |
| **Sent:** | Friday, May 27, 2011 1:07 AM |
| **To:** | robinsonesq@aol.com; Dan LaBelle; Giaimo, Gerald T.; DCarpenter US Benefits |
| **Cc:** | MCGRATH@halloran-sage.com; Joe Pastore; Don Trudeau |
| **Subject:** | Re: Charter oak |

They took out 30 boxes, handed me bunch of subpoenas and said inventory will be done in a few minutes and then the server imaging should finish in another 20 min after that.

We will scan and send inventory when we get it - they will let us in while server finishes.

Sent from my BlackBerry

---

**From:** "robinsonesq@aol.com" <robinsonesq@aol.com>
**Date:** Thu, 26 May 2011 23:48:34 -0400
**To:** DA Wayne<dawayne@benistar.com>; Dan LaBelle<labelle@halloran-sage.com>; Giaimo, Gerald T.<giaimo@halloran-sage.com>; DCarpenter US Benefits<dcarpenter@usbgi.com>
**ReplyTo:** "robinsonesq@aol.com" <robinsonesq@aol.com>
**Cc:** MCGRATH@halloran-sage.com<MCGRATH@halloran-sage.com>; Joe Pastore<jpastore@foxrothschild.com>; Don Trudeau<dtrudeau@benistar.com>
**Subject:** Re: Charter oak

Keep your chin up! Don and I are staying here until last techie leaves!

Sent on the Sprint® Now Network from my BlackBerry®

---

**From:** dawayne@benistar.com
**Date:** Fri, 27 May 2011 03:46:28 +0000
**To:** Dan LaBelle<labelle@halloran-sage.com>; robinsonesq@aol.com<robinsonesq@aol.com>; Giaimo, Gerald T.<giaimo@halloran-sage.com>; DCarpenter US Benefits<dcarpenter@usbgi.com>
**ReplyTo:** dawayne@benistar.com
**Cc:** MCGRATH@halloran-sage.com<MCGRATH@halloran-sage.com>; Joe Pastore<jpastore@foxrothschild.com>; Don Trudeau<dtrudeau@benistar.com>
**Subject:** Re: Charter oak

Maybe it wouldn't take so long if the agents would move a little faster! The one in my office is leaned back in my chair, feet up on console reading a file.

Sent from my BlackBerry

---

**From:** "LaBelle, Dan E." <LABELLE@halloran-sage.com>
**Date:** Thu, 26 May 2011 23:14:39 -0400
**To:** robinsonesq@aol.com<robinsonesq@aol.com>; DA Wayne<dawayne@benistar.com>; Giaimo, Gerald T.<giaimo@halloran-sage.com>; DCarpenter US Benefits<dcarpenter@usbgi.com>

1

SA-68

| | |
|---|---|
| **From:** | DA Wayne <dawayne@benistar.com> |
| **Sent:** | Friday, May 27, 2011 3:50 AM |
| **To:** | DCarpenter US Benefits |
| **Subject:** | My car |

Don't freak when you see my car in parking lot in a.m.
My battery dead. Kris came and got me - not too happy about the 3:15 wake up call!
Sent from my BlackBerry

1